**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Algienon TANNER, Defendant–**
**Appellant.**

No. 90–2205.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 7, 1990.

Decided Aug. 27, 1991.

Deborah J. Daniels, U.S. Atty., Indianapolis, Ind., Rodger A. Heaton, Asst. U.S.

Atty., Springfield, Ill., for plaintiff-appellee.

Joseph K. Etling, Terre Haute, Ind., for defendant-appellant.

Before POSNER and RIPPLE, Circuit Judges, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

Defendant Algienon Tanner has appealed from a final judgment and conviction on one count of possession with intent to distribute cocaine while an inmate in a United States penitentiary, in violation of 21 U.S.C. § 841(a). He argues on appeal that the district court erred in denying both his motion to dismiss the indictment for violation of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, and his motion for mistrial or continuance. He also challenges the sufficiency of the evidence to support the jury's verdict. For the reasons set forth below we affirm the defendant's conviction.

## BACKGROUND

Because the defendant's primary contention is that his rights were violated under the Speedy Trial Act, a detailed chronology of his pretrial history is essential to this review.

On September 12, 1989, defendant Algienon Tanner and his wife, Brenda Tanner, were charged in a single-count indictment with possessing with intent to distribute 55½ grams of cocaine, in violation of 21 U.S.C. § 841(a)(1). The indictment was based upon facts arising out of a visit Mrs. Tanner made to see her husband when he was an inmate in the United States Penitentiary in Terre Haute, Indiana, on February 12, 1988. In the visiting room, while Mr. Tanner was surreptitiously taking certain items from Mrs. Tanner and swallowing them, prison officials were monitoring

and recording their actions. After the visit, the defendant was strip-searched, advised of his rights, and told of the officials' observations. Thereupon he agreed to turn over the secreted items; while in a dry cell he regurgitated 27 condoms containing cocaine.

At the time he was indicted, Algienon Tanner was an inmate in the United States Penitentiary in Leavenworth, Kansas. On September 13, 1989, a warrant was issued requiring Mr. Tanner's appearance, and trial was set for November 15, 1989 in Terre Haute, Indiana. On October 3, 1989, the government requested that Mr. Tanner be transported from Leavenworth to the Southern District of Indiana for prosecution. The records office of the Leavenworth penitentiary received the detainer against Algienon Tanner on October 10, 1989; it promptly served the detainer and advised Mr. Tanner of his rights. The defendant first appeared before a magistrate in Terre Haute, Indiana on October 31, 1989. However, since neither Algienon nor Brenda Tanner had made an initial appearance before a judicial officer in Indiana by October 24, 1989, the court granted the government's motion to vacate the trial date of November 15, 1989, and reset trial for January 10, 1990.

In the meantime, Brenda Tanner had been arrested in Michigan on October 6, 1989. She appeared before a magistrate in the Eastern District of Michigan, who set a removal hearing for October 30, 1989. When she indicated to authorities in Michigan that she wanted to plead guilty and to consent to the disposition of her case in Michigan pursuant to Rule 20 of the Federal Rules of Criminal Procedure,[1] her removal hearing was continued. On December 28, 1989, in the Eastern District of Michigan, Brenda Tanner signed a plea agreement which, among other things, required

---

* Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

1. In pertinent part, Rule 20 provides:
 A defendant arrested, held, or present in a district other than that in which an indictment or information is pending against that defendant may state in writing a wish to plead

guilty or nolo contendere, to waive trial in the district in which the indictment or information is pending, and to consent to disposition of the case in the district in which that defendant was arrested, held, or present, subject to the approval of the United States attorney for each district. . . .

her to testify against her husband at the trial scheduled for January 10, 1990. She also executed the Rule 20 Consent to Transfer of Case for Plea and Sentence at that time. The Rule 20 Form was approved by the United States Attorney for the Eastern District of Michigan in Detroit and thereafter forwarded to the United States Attorney's office in Southern Indiana for approval and filing with the court there. The actual filing of the Rule 20 Consent Form took place on January 24, 1990. Brenda Tanner pleaded guilty March 3, 1990, in the Eastern District of Michigan. As of the date of her husband's trial she had not yet been sentenced.

On January 4, 1990, the government moved for a continuance of Mr. Tanner's trial date so that it could arrange for Brenda Tanner's presence in Indiana to testify against her husband. It also requested that the delay between October 6, 1989 and the anticipated filing of Brenda Tanner's Rule 20 Consent Form be excluded from the speedy trial period pursuant to 18 U.S.C. §§ 3161(h)(7)[2] and (h)(1)(G)[3] because the codefendants had not yet been severed. The next day the government supplemented the motion with a request for further delay due to Brenda Tanner's recent surgery, pursuant to 18 U.S.C. § 3161(h)(3)(A),[4] which suspends the speedy trial clock if a defendant or key witness is unavailable. In response, on January 10, 1990, the defendant Algienon Tanner filed a motion to dismiss the case against him for violation of the Speedy Trial Act.

By order of January 11, 1990, the district court granted the government's motion for a continuance and excluded the periods of delay related to the Rule 20 processing and the medical unavailability of Brenda Tanner, pursuant to 18 U.S.C. §§ 3161(h)(7), 3161(h)(1)(G), and 3161(h)(3)(A). It reset the trial date to March 1, 1990. On January 16, 1990, the court denied Algienon Tanner's motion to dismiss based on its January 11 order.

After the defendant's two motions for continuance of the trial (due to the unavailability of counsel) were granted by the court on February 8 and March 14, 1990, Algienon Tanner's trial by jury began on April 9, 1990 before Judge Larry J. McKinney. Before proceeding, however, Mr. Tanner moved to proceed *pro se* or for appointment of new counsel. The court granted defendant's motion for new counsel, appointed a new defense attorney, and scheduled trial to resume on April 30, 1990. On April 9, Mr. Tanner also filed a second motion to dismiss his case for violation of the Speedy Trial Act.

On April 30, when trial commenced, the court denied Algienon Tanner's motion for dismissal and stated that it would issue a written opinion on the motion. It also conducted a hearing, before opening statements, on the government's inability to locate certain defense witnesses. Ultimately it denied Algienon Tanner's motion for mistrial or continuance based upon that issue.

The trial ended on May 1, 1990, with the jury's finding that Mr. Tanner was guilty of the offense charged. On May 18, 1990, he was sentenced to a term of 230 months in prison, to be served consecutive to his current sentence, plus a special assessment pursuant to 18 U.S.C. § 3013. On the same day, the court's order denying the defen-

---

**2.** 18 U.S.C. § 3161(h)(7) provides:

(h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

\* \* \* \* \* \*

(7) A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.

**3.** 18 U.S.C. § 3161(h)(1)(G) also mandates exclusion of:

(1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—

\* \* \* \* \* \*

(G) delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure....

**4.** 18 U.S.C. § 3161(h)(3)(A) mandates exclusion of:

(3)(A) Any period of delay resulting from the absence or unavailability of the defendant or an essential witness.

dant's motion to dismiss was filed. In it the court concluded that Algienon Tanner's speedy trial rights were not violated, for the clock had begun to run on January 24, 1990, and at most only 34 days had expired between that date and the trial. The court reiterated its earlier determination in the Order of January 11, 1990 that the periods of delay related to Brenda Tanner's Rule 20 processing and medical unavailability were properly excludable from the speedy trial calculations. It also explicitly excluded the periods of delay from the defendant's two motions for continuance and motion for production of evidence and the court's further continuance, after the trial began, to allow for preparation by the newly appointed defense counsel.

### ISSUES

I. *Alleged Violations of the Speedy Trial Act*

Algienon Tanner contends that the trial court erred in its denial of his motion to dismiss the indictment. According to the defendant, under the Speedy Trial Act the government must bring a criminal defendant to trial within seventy days, in order to limit the time during which criminal charges remain unresolved. Mr. Tanner asserts that the indictment against him should have been dismissed for violation of the seventy-day period.

■ On appeal we review the district court's interpretation of the Act *de novo*, *United States v. Dawn*, 900 F.2d 1132, 1135 (7th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 368, 112 L.Ed.2d 330 (1990), and its findings of fact concerning the Act for

clear error.[5] *United States v. Magana-Olvera*, 917 F.2d 401, 404 (9th Cir.1990); *United States v. Simmons*, 786 F.2d 479, 483 (2nd Cir.1986). The decision to grant a continuance under the Speedy Trial Act is well within the discretion of the trial court. *United States v. Vega*, 860 F.2d 779, 787 (7th Cir.1988); *United States v. Tedesco*, 726 F.2d 1216, 1221 (7th Cir.1984). "Absent legal error, exclusions of time cannot be reversed except when there is an abuse of discretion by the court and a showing of actual prejudice." *United States v. Scott*, 784 F.2d 787, 789 (7th Cir.), *cert. denied*, 476 U.S. 1145, 106 S.Ct. 2257, 90 L.Ed.2d 702 (1986) (per curiam).

■ Mr. Tanner asserts that the speedy trial clock began on October 10, 1989, the date on which the detainer was served and on which he requested a speedy trial. In the alternative, he argues that the clock began to run on October 30, 1989, or whenever Brenda Tanner agreed to proceed under Rule 20, since that consent created a severance of her case from his. However, the district court found that the clock did not begin to run until January 24, 1990, the date that codefendant Brenda Tanner's completed Consent to Transfer Pursuant to Rule 20 was filed with the clerk in the Southern District of Indiana.

We find no merit to Algienon Tanner's contentions, for the defendant has incorrectly identified the event that triggers the speedy trial clock. The statute clearly states that calculations commence from the later of two dates: the filing of the indictment or information, or the defendant's initial appearance before a judicial officer. 18 U.S.C. § 3161(c)(1).[6] *See United States*

5. We note that the defendant twice moved to dismiss the indictment, on January 10, 1990 and just prior to trial. He failed to challenge the district court's Order of January 16, 1990 that "overruled" his first motion to dismiss. Generally, if no objection is raised to the court's refusal to dismiss the indictment, or to its exclusion of certain periods under the Speedy Trial Act and continuation of the trial date, we overturn an order on appeal only if it constitutes plain error. *United States v. Asubonteng*, 895 F.2d 424, 427 (7th Cir.), *cert denied sub nom. Rivers v. United States*, — U.S. —, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990), citing *United States v. Andrus*, 775 F.2d 825, 852 (7th Cir.

1985) and *United States v. Samples*, 713 F.2d 298, 302 (7th Cir.1983). However, in its Order of May 18, 1990, from which the defendant now appeals, the court repeated and explained its holdings from the earlier denial of Mr. Tanner's motion to dismiss. Since the defendant properly objected to that ruling at trial, we review the court's decision of May 18, 1990 in full under the principles enunciated above.

6. 18 U.S.C. § 3161(c)(1), in pertinent part, provides:

In any case in which a plea of not guilty is entered, the trial of a defendant charged in an

*v. Owokoniran,* 840 F.2d 373, 374 (7th Cir. 1987). Algienon Tanner was indicted on September 12, 1989, and brought before the court on October 31, 1989.

The defendant responds that, even if October 31, 1989 is the proper date from which to begin, more than seventy days elapsed between his initial appearance and the court's denial of his dismissal motion.

If Algienon Tanner had been the only defendant, for speedy trial calculations his clock would have commenced running with his initial appearance on October 31, 1989. But the presence of codefendants in an indictment has an effect on the speedy trial calculations. In this case we have two defendants, indicted together, neither of whom sought severance from the other, and both of whom were required to appear in the Southern District of Indiana pursuant to the indictment. Algienon Tanner was in fact transferred from Kansas, and appeared; however, Brenda Tanner's transfer from Michigan was continued due to her desire to plead guilty and to proceed under Rule 20. As a result, she did not make an initial appearance before the court in Indiana as her husband did. Instead, her Rule 20 Consent to Transfer was signed on December 28, 1989 and filed in the Southern District of Indiana on January 24, 1990.

■ Because Congress has indicated its preference for joint trials and its willingness to approve liberal delays resulting from the joinder of codefendants in trial, *United States v. Scott,* 784 F.2d at 790, the Speedy Trial Act excludes from the seventy-day time requirement a "reasonable period of delay" when the codefendant with whom the defendant is joined for trial fulfills two criteria: (1) The time for trial as to that codefendant has not run; and (2) no

motion for severance has been granted. 18 U.S.C. § 3161(h)(7). Although there is a preference for joint trials, delays resulting from severance in a multiple-defendant proceeding can also be excluded under this provision. *See United States v. Vega,* 860 F.2d at 786–87. The goal of expediting criminal cases can be met when Rule 20 transfers are permitted.

■ This court has long held that, under § 3161(h)(7), "the excludable delay of one defendant may be ascribed to all codefendants in the same case, absent severance." *United States v. Dennis,* 737 F.2d 617, 620 (7th Cir.), *cert. denied,* 469 U.S. 868, 105 S.Ct. 215, 83 L.Ed.2d 145 (1984). The delay related to the unavailability of one defendant who is present in another district is also properly excludable for all codefendants. *United States v. Owokoniran,* 840 F.2d at 375; *United States v. Dennis,* 737 F.2d at 620–21.

The record before the court reflects that neither Algienon nor Brenda Tanner sought severance; thus, clearly no motion for severance was granted. Furthermore, Brenda Tanner's time for trial never ran, since her initial appearance was continued during the processing of her guilty plea and Rule 20 Consent to Transfer. As a result, Algienon Tanner's codefendant fulfills the criteria for § 3161(h)(7), and we can find that a period of delay caused by codefendant Brenda Tanner is excludable in Algienon Tanner's speedy trial calculations if that delay is reasonable.[7] *Dennis,* 737 F.2d at 621.

Whether the delay was reasonable depends on the facts of the case. The facts herein are virtually identical to those in *Dennis,* in which two defendants were indicted together and neither moved for severance, but one was not available for ar-

information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs....

**7.** This analysis follows our decision in *United States v. Dennis,* which considered the legisla-

tive history and the language of this codefendant provision. *But see United States v. Vasquez,* 918 F.2d 329 (2nd Cir.1990) (when codefendant did not move for a severance, he is not entitled to benefit of reasonableness requirement of § 3161(h)(7)); *United States v. Mayes,* 917 F.2d 457 (10th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1087, 112 L.Ed.2d 1192 (1991) (when defendants did not seek severance, no nonexcludable time ran under the Act).

raignment until proceedings in another district had concluded. In *Dennis* the speedy trial clock began on the date of the second codefendant's arraignment. In this case the clock began on the date of the codefendant's filing of her Consent to Transfer, according to the district court's determination. We agree. With the filing of her Consent to Transfer of Case for Plea and Sentence Under Rule 20 and her related plea agreement, codefendant Brenda Tanner was effectively severed from Algienon Tanner.[8] Until that date, however, they were codefendants, and the delay related to the unavailability of Brenda Tanner was properly excludable for Algienon Tanner. *Owokoniran, supra.* And this court has further held that the delay caused by the Rule 20 proceedings of a codefendant is clearly excludable, under 18 U.S.C. § 3161(h)(1)(G)[9], from the 70-day limit contained in the Speedy Trial Act. *United States v. Young,* 814 F.2d 392, 395 (7th Cir.), *cert. denied,* 484 U.S. 838, 108 S.Ct. 121, 98 L.Ed.2d 79 (1987). *See also United States v. Hernandez,* 863 F.2d 239, 241 (2nd Cir.1988).

Therefore we find that the delay resulting from Brenda Tanner's Rule 20 processing was both proper and reasonable, and may be ascribed to codefendant Algienon Tanner. We further find that, until severance was effectuated by the official filing of Mrs. Tanner's Consent to Transfer, only one speedy trial clock governed the actions of the codefendants charged in the indictment. *See United States v. Culpepper,* 898 F.2d 65, 66 (6th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 155, 112 L.Ed.2d 120 (1990). Therefore, we uphold the district court's determination that January 24, 1990 was the triggering date for Algienon Tanner's speedy trial clock.

Now that it is established that the defendant's speedy trial clock began on January 24, 1990, we examine the 74 days between that date and the trial. The government was required to bring the defendant to trial within 70 days; therefore at least four days must have been properly excludable under the Speedy Trial Act to reduce the time to within the 70-day limit imposed under the Act.

■ The defendant himself filed two motions for continuance and a motion for production of evidence, and has not objected to the exclusion of the periods (a total of 19 days) during which those motions were pending. Delays caused by pending pretrial motions are automatically excludable under 18 U.S.C. § 3161(h)(1)(F). *Henderson v. United States,* 476 U.S. 321, 329–30, 106 S.Ct. 1871, 1876, 90 L.Ed.2d 299 (1986); *United States v. Kucik,* 909 F.2d 206, 210 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 791, 112 L.Ed.2d 853 (1990). Once those periods are deducted from the calculations, it can be seen that the trial came before the Act's 70-day "deadline." Consequently, we find that no violation of the Speedy Trial Act occurred, and that the district court acted within its discretion in refusing to dismiss the indictment against Algienon Tanner.

■ We will turn briefly to two arguments presented by the defendant for the first time on appeal. Because they were not raised by objection at the district court level, the issues were not properly preserved for appeal, and will not be considered absent plain error. *United States v. Asubonteng,* 895 F.2d 424, 427 (7th Cir.), *cert. denied sub nom. Rivers v. United States,* 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990). "Plain error occurs when, in light of the entire record, [the trial court's order]

---

**8.** Before the Consent to Transfer is filed, it must pass through many hands for approval of the interdistrict transfer. The defendant's written consent to plead guilty to out-of-district charges must be considered by the United States Attorneys in both the transferor and transferee districts. *United States v. Ford,* 627 F.2d 807, 812 (7th Cir.), *cert. denied,* 449 U.S. 923, 101 S.Ct. 324, 66 L.Ed.2d 151 (1980). Then the transferor court must agree to the charge transfer, and the transferee court must accept the defendant's

guilty plea. 8A J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 20.03[2] (2d ed. 1985). The filing of the Rule 20 Transfer is the final step in that chain of review. We find that the twenty-six day period between Brenda Tanner's signing of the consent and its filing was reasonable.

**9.** *See* footnote 3, *ante.*

had a probable impact upon the finding of guilty." *Id.* (quoting *United States v. Andrus,* 775 F.2d 825, 852 (7th Cir.1985)).

The defendant's first assertion is that there was undue delay in obtaining his presence before the court. By his calculations, 47 days passed between his indictment and initial appearance. We find, however, that Mr. Tanner's tally is of little consequence, for Congress clearly stated that time periods under the Speedy Trial Act, when applied to incarcerated defendants, take effect only when the government has obtained the presence of the prisoner for trial. *See* H.R.Rep. No. 1508, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 7401, 7416, 7429; *United States v. Stoner,* 799 F.2d 1253, 1258 (9th Cir.), *cert. denied,* 479 U.S. 1021, 107 S.Ct. 678, 93 L.Ed.2d 729 (1986).

■ The procedure for bringing to trial an offender who is already in custody, serving a term of imprisonment for a different offense, is established in 18 U.S.C. § 3161(j).[10] Under this section, no specific time limits are presented; however, promptness is mandated. Defendant's assertion of undue pre-arraignment delay, unsupported by reason or authority, fails to show that the government did not act promptly.

■ The Act does not define the term "prompt," and the sparse number of cases discussing the term have based their conclusions on the circumstances surrounding the delay. *See, e.g., United States v. Glasgow,* 790 F.2d 446, 450 (6th Cir.1985), *cert. denied,* 475 U.S. 1124, 106 S.Ct. 1647, 90 L.Ed.2d 191 (1986) (period from filing of writ of habeas corpus ad prosequendum to arraignment less than a month later was prompt); *United States v. Lehman,* 756 F.2d 725, 727 (9th Cir.), *cert. denied,* 474 U.S. 994, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985) (government's two-month delay between court's mandate for retrial and defendant's initial appearance not prompt, but not violation of sixth amendment right to speedy trial); *United States v. Anderton,* 752 F.2d 1005, 1007–08 (5th Cir.1985) (delay of more than fifteen months between indictment and arraignment not shown to violate § 3161(j)); *United States v. Roper,* 716 F.2d 611, 613–14 (4th Cir. 1983) (delay of more than four months between indictment and arraignment did not violate promptness requirement of § 3161(j)).

In this case there was a period of 26 days from the date of Mr. Tanner's indictment until the detainer reached the prison custodian. On that same day, the custodian advised the prisoner of the charge and of his right to demand a trial. The government brought Mr. Tanner to Indiana for his initial appearance 21 days later. After consideration of these time periods, we find that the government's actions were sufficiently prompt.

■ Nothing offered by the defendant or found in the record by this court persuades us that there was plain error in the delay prior to Algienon Tanner's appearance in the trial venue. Certainly the delay had no impact on the jury's finding of guilt. In any case, if § 3161(j) had been violated by the government's lack of promptness, the remedy for such a violation is not dismissal of the indictment, but rather disciplinary sanctions against the government at-

---

10. 18 U.S.C. § 3161(j) provides:
(1) If the attorney for the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution, he shall promptly—
(A) undertake to obtain the presence of the prisoner for trial; or
(B) cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial.
(2) If the person having custody of such prisoner receives a detainer, he shall promptly advise the prisoner of the charge and of the prisoner's right to demand trial. If at any time thereafter the prisoner informs the person having custody that he does demand trial, such person shall cause notice to that effect to be sent promptly to the attorney for the Government who caused the detainer to be filed.
(3) Upon receipt of such notice, the attorney for the Government shall promptly seek to obtain the presence of the prisoner for trial. . . .

torney. 18 U.S.C. § 3162(b)(4); *United States v. Dawn*, 900 F.2d at 1135.

The other charge raised by the defendant for the first time herein is that the court's granting of a continuance in its Order of January 11, 1990 was retroactive, impermissibly wiping out violations of the Speedy Trial Act after they occurred. As support for his assertion, Mr. Tanner cites *United States v. Janik*, 723 F.2d 537 (7th Cir.1983).

■ In *Janik*, this court reviewed a district court's grant of an "ends of justice" continuance based upon 18 U.S.C. § 3161(h)(8)(A).[11] It concluded that a district judge must make findings that the "ends of justice" require a postponement of the trial. *Id.* at 545. Although the judge may enter those findings after granting the continuance, he must consider the matter before the period sought to be excluded begins to run; thus a continuance cannot be a *nunc pro tunc* retroactive justification for previously unauthorized delays. *Id.*

In Algienon Tanner's case, the district court made proper "ends of justice" findings under this provision in its Order of March 14, 1990 granting the defendant's motion for continuance due to unavailability of counsel. Such exclusions are valid under 18 U.S.C. § 3161(h)(8)(B)(iv); a continuance on that basis was certainly within the court's discretion. And since the findings were made contemporaneously with the grant of a continuance, there was no retroactive exclusion.

■ However, Mr. Tanner has not objected to this continuance. The one to which he objects is the continuance approved in the district court's January 11, 1990 Order. The court's two justifications for postponing the trial were the ongoing Rule 20 processing of codefendant Brenda Tanner and her present and future medical unavailability. These excludable periods were properly based upon other provisions of the Speedy Trial Act. Furthermore, prior continuances had been granted in the district courts of Southern Indiana and Eastern Michigan based upon Mrs. Tanner's intention to proceed under Rule 20. Mr. Tanner has confused retroactive continuances forbidden under the Act with continuances validly granted and substantiated during the speedy trial time period. The continuance at issue validly excluded the time it encompassed. *See United States v. Carey*, 746 F.2d 228, 230 n. 2 (4th Cir.1984), *cert. denied*, 470 U.S. 1029, 105 S.Ct. 1398, 84 L.Ed.2d 786 (1985). As a consequence, we find no merit in the defendant's argument and certainly no plain error on the part of the trial court.

We conclude that the district court correctly interpreted the Speedy Trial Act by calculating the interval from January 24, 1990, when Brenda Tanner's Consent to Transfer of Case was filed and Algienon Tanner was effectively severed, to April 9, 1990, the date of trial. Having found that Mr. Tanner's objections to certain excluded periods of delay were without merit, and that the properly excludable times to which the defendant did not object brought the speedy trial calculations to within the 70–day limit required under the Act, we need not review further the other findings of the district court in its Order of May 18, 1990. Nothing in the record before us indicates that the district court's grant of continuances and denial of the defendant's motion to dismiss constituted an abuse of its discretion. Furthermore, Mr. Tanner made no showing of actual prejudice resulting from the delay. Accordingly, we affirm the district court's order denying Algienon Tanner's motion to dismiss the indictment against him.

---

**11.** In computing speedy trial time, 18 U.S.C. § 3161(h)(8)(A) requires exclusion of "[a]ny period of delay resulting from a continuance granted by any judge … if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay … shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial."

## II. Court's Denial of Mistrial and Continuance

Algienon Tanner contends that the government failed to comply with the court's mandate that it locate witnesses critical to Mr. Tanner's defense. He further claims that his sixth amendment right to have compulsory process for obtaining witnesses in his favor was violated by the district court's refusal to grant a mistrial or a continuance in this cause.

The facts underlying this charge arise from the defendant's plan to present a defense of duress at trial. On March 15, 1990, he notified the court of his defense and filed a motion requesting that the government produce information concerning three inmates who had been in the prison unit with him, known to him only as Rhonda, Shine or Sunshine, and Capone.[12] The court granted the motion. On March 27, 1990, the government submitted its response: A search through the computerized index of nicknames for inmates at the Terre Haute Penitentiary during the relevant period failed to locate anyone with those names. Other attempts to produce the inmates as witnesses were unsuccessful.[13]

On April 30, 1990, before trial began, the court conducted a hearing on the adequacy of the government's efforts to locate the inmate witnesses. Algienon Tanner testified that he hoped to elicit testimony from these witnesses about "the problems that were taking place in the cellhouse at that time," and "the environment as to what was going down in the unit." He thought they would tell the court that the defendant's life was in danger if he didn't bring

drugs into the prison. The defendant repeatedly stated, however, that he was not sure whether the inmates would testify, or what they would say. He admitted that none of these inmates was in the visiting room on the date of the crime and none of them was the one threatening to kill him.

Following the hearing the defendant moved for a mistrial or, in the alternative, for a continuance to locate the inmate witnesses. The court postponed its ruling on the motion at that time.[14] The next morning the court denied the defendant's motion based upon "the nature of the testimony of the witnesses sought." Because there was no information proffered at the hearing that these inmates actually heard a threat against the defendant, the court found that they could testify only to the rumor of a threat; therefore their testimony would be inadmissible as hearsay and speculation. Moreover, such testimony might be cumulative, the court pointed out, for the testimony of Mr. Carbough, the defendant's cellmate, was admissible and supported Algienon Tanner's defense of duress.[15]

Appealing the court's denial of his motion, Mr. Tanner bases his sixth amendment claim on *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967):

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies.

12. In his duress defense, the defendant claimed that other inmates in the Terre Haute Penitentiary threatened to kill him if he didn't bring in drugs, and that inmates Rhonda, Shine and Capone knew of the threats against him.

13. The court first allowed subpoenas to issue for the inmates, but then granted the government's motion to quash the subpoenas because the prisoners could not be located. However, the court added that the order would be reconsidered if the defendant could produce additional information regarding the identity of the individuals. Although the defendant agreed to provide descriptions, he did not give the prison

officials any information until 8:00 p.m. of the evening before the trial resumed.

14. The court wanted to hear the testimony of George McDaniel, the counselor at Terre Haute Penitentiary to whom the defendant claimed he gave the descriptions of Rhonda, Shine and Capone. However, Mr. McDaniel testified that he did not recall any descriptions given to him by Mr. Tanner.

15. Mr. Carbough testified that the defendant had planned to bring narcotics into the prison because of death threats from Colombian prisoners.

 In its disposition of a motion requesting mistrial or continuance, a district court may use broad discretion. Our review is limited to whether the trial court committed an abuse of its discretion when it denied the defendant's motion for mistrial, *see United States v. Beverly*, 913 F.2d 337, 351 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 766, 112 L.Ed.2d 786 (1991), or for continuance, *see United States v. Dougherty*, 895 F.2d 399, 405 (7th Cir.1990). The same abuse of discretion standard is applied when we consider the court's ruling on the inadmissibility of the testimony being sought by the defendant. *See United States v. Mazzanti*, 888 F.2d 1165, 1169 (7th Cir.1989), *cert. denied sub nom. Born v. United States*, —— U.S. ——, 110 S.Ct. 2167, 109 L.Ed.2d 497 (1990) (citations omitted). Therefore the defendant carries a heavy burden on appeal. *Id.*

 The right of a defendant to present witnesses in his defense is fundamental under the sixth and fourteenth amendments of the United States Constitution. *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973); *Washington v. Texas*, 388 U.S. at 19, 87 S.Ct. at 1923. That right is abridged when a defendant is denied the opportunity to present at trial "a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense." *Washington v. Texas*, 388 U.S. at 23, 87 S.Ct. at 1925; *Roviaro v. United States*, 353 U.S. 53, 63–64, 77 S.Ct. 623, 629–30, 1 L.Ed.2d 639 (1957). However, no constitutional violation has occurred if the potential witness could not have provided personal observations concerning relevant and material evidence. *United States v. Verkuilen*, 690 F.2d 648, 659 (7th Cir.1982) (citing *United States v. DeStefano*, 476 F.2d 324, 330 (7th Cir.1973)). Therefore we review the possible testimony of the unlocated inmates to determine its admissibility:

To decide whether a constitutional violation has occurred, we must determine whether the testimonial evidence to be presented by the witness "was relevant, material, and vital to the defense, and whether the exclusion of that evidence was arbitrary."

*United States ex rel. Ashford v. Director, Illinois Dept. of Corrections*, 871 F.2d 680, 686 (7th Cir.1989) (quoting *Lange v. Young*, 869 F.2d 1008, 1011 (7th Cir.), *cert. denied sub nom. Lange v. McCaughtry*, 490 U.S. 1094, 109 S.Ct. 2440, 104 L.Ed.2d 996 (1989)) (citations omitted).

We note first that the court's pretrial rulings in this case supported the defendant's right to compulsory process of witnesses for his defense: Its March 21, 1990 Order required the production of information concerning Rhonda, Shine and Capone, and its April 5, 1990 Order granted the defendant's petition for subpoenas for those inmates. Moreover, despite the subsequent reversal of that Order of April 5 for failure to locate the inmates, it issued a writ ad testificandum on April 6, 1990 for Mr. Carbough, the one inmate who was found.

 However, at the hearing on April 30 the court determined that the testimony these witnesses could have provided would not, in any event, have been admissible.[16] Despite extensive questioning and evidence by the court itself, Algienon Tanner continually raised only speculation concerning the possible testimony of those witnesses. The court based its conclusion upon the defendant's failure to show that the inmates had personal knowledge of his visit with Mrs. Tanner or of death threats against him. Furthermore, the one person who could testify with personal knowledge of the events occurring in the cellblock and in the visiting room, the defendant's cellmate, did testify.

 We find that Mr. Tanner was unable to meet his burden on appeal. The defendant had ample opportunity to make the required showing that the testimony of

---

**16.** Because the court's ruling was based upon the inadmissible nature of the potential testimony, the court stated that it did not need to determine whether the government had failed to assist the defendant in obtaining witnesses critical to the defense.

these defense witnesses would have been relevant and material. When the record is devoid of such factual proof, a court is within its discretion in denying defense requests for the presentation of those witnesses. *See United States v. Verkuilen,* 690 F.2d at 659.

Mr. Tanner's sixth amendment right to secure defense witnesses was not violated by his inability to present testimony that would be irrelevant or immaterial (*see, e.g., Mazzanti,* 888 F.2d at 1169–70; *Verkuilen,* 690 F.2d at 659), hearsay or conjecture (*see, e.g., Rowan v. Owens,* 752 F.2d 1186, 1191 (7th Cir.1984), *cert. denied,* 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 691 (1986)), or cumulative (*see, e.g., United States ex rel. Smith v. Lane,* 794 F.2d 287, 292 (7th Cir.1986); *United States ex rel. Searcy v. Greer,* 768 F.2d 906, 913 (7th Cir.), *cert. denied,* 474 U.S. 996, 106 S.Ct. 412, 88 L.Ed.2d 363 (1985)). We find that the testimonial evidence was neither arbitrarily excluded nor vital to the defense. Therefore we hold that the district court did not abuse its discretion in denying Algienon Tanner's motion for mistrial or continuance.

### III. *Sufficiency of the Evidence*

Algienon Tanner's final contention is that the evidence at trial was insufficient to support the jury verdict. The defendant concedes that there was evidence of his possession of cocaine, but claims there was no evidence that he intended to distribute it. He further asserts that he presented sufficient evidence of duress, but the government offered nothing to rebut his defense.

Our review of the sufficiency of evidence presented at Algienon Tanner's trial is well established. Taking the view most favorable to the government, we ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Garrett,* 903 F.2d 1105, 1109 (7th Cir.) *cert. denied,* —— U.S. ——, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990). The verdict of a jury must be sustained if there is substantial evidence to support it. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Grizales,* 859 F.2d 442, 444 (7th Cir.1988). Therefore a defendant faces a heavy burden in establishing his claim. *United States v. Lamon,* 930 F.2d 1183, 1190 (7th Cir.1991).

Mr. Tanner has failed to prove his claim that there was no evidence of his intent to distribute cocaine. It is true that he was confronted immediately after he took possession of the narcotics and before he could distribute them in the prison; therefore there is no direct evidence of his intention to disseminate the drugs. However, circumstantial evidence can equally be used to prove such an intent beyond a reasonable doubt. *United States v. Hammond,* 826 F.2d 577, 580 (7th Cir.1987); *United States v. Nocar,* 497 F.2d 719, 725 (7th Cir.1974).

Proof of possession of substantial amounts of narcotics supports an inference that the possessor intended to distribute the drugs rather than to retain them for personal use. *United States v. Lendmann,* 757 F.2d 916, 918 (7th Cir.1985); *United States v. Franklin,* 728 F.2d 994, 998 (8th Cir.1984). Although mere possession of a small quantity may be as indicative of personal use as of distribution, other indicia of distribution may justify the inference of intent to distribute, particularly when viewed in a light most favorable to the government. *United States v. Garrett,* 903 F.2d at 1113 (3.5 grams cocaine, found in individual distribution packs, with loaded pistol, was held a distributable amount). *See also United States v. Ramirez,* 608 F.2d 1261, 1264 (9th Cir.1979) (in light of defendant's "sharing" of cocaine with others, and of other evidence, 5 grams of cocaine was held a distributable amount), *cited in Garrett.*

Factors other than the mere quantum of a controlled substance that suggest a distribution plan include evidence of its packaging in a manner consistent with distribution (*United States v. Gooding,* 695

F.2d 78, 84 (4th Cir.1982), *cited in Garrett,* 903 F.2d at 1113 n. 10), and of its resale value (*United States v. Ramirez–Rodriquez,* 552 F.2d 883, 885 (9th Cir.1977)). Drug possession in conjunction with possession of weapons supports the inference of intent to distribute. *Garrett,* 903 F.2d at 1113. And possession of a narcotic in a prison setting gives rise to the inference. *United States v. Alfaro,* 935 F.2d 64, 68 (5th Cir.1991); *Ramirez–Rodriquez,* 552 F.2d at 885.

■ Our examination of the record reveals substantial evidence of Mr. Tanner's intent to distribute cocaine. The prison officers attending the defendant in the dry cell testified to these admissions by Mr. Tanner: (1) The cocaine in his possession was pure; (2) it was worth about $100,000 on the compound; (3) it was so strong that, if it was cut with flour, it would be worth a lot more; and (4) he had to carry drugs for fear of his life. The evidence showed that 55½ grams of cocaine, with a measured purity of greater than 90%, was recovered; and the testimony of qualified witnesses revealed that such high purity and quantity was indicative of distribution rather than personal use. Two correctional officials testified that 55½ grams was the largest quantity they had known, in their many years of prison service, to be recovered in the penitentiary visiting room.

■ A defendant's admissions and the evidence corroborating them can be sufficient to support a finding beyond a reasonable doubt that he intended to distribute cocaine. *See, e.g., United States v. Grizales,* 859 F.2d 442, 446 (7th Cir.1988). Based on the record before us, we conclude that the large amount of 90% pure cocaine seized in the prison itself, in conjunction with the other indicia of intent to distribute narcotics, provided sufficient relevant evidence from which a reasonable jury could properly find or infer, beyond a reasonable doubt, that the defendant possessed the cocaine with the intent to distribute it.

Finally we turn to Algienon Tanner's defense of duress, a defense which the defendant must support with sufficient evidence.

[A] defendant is entitled to have the jury consider any theory of defense which is supported by law and has some foundation in the evidence, even though such evidence may be weak, insufficient or of doubtful credibility. However, if the defendant fails to sustain his evidentiary burden the court is duty-bound not to instruct the jury on the defense.

*United States v. Patrick,* 542 F.2d 381, 386 (7th Cir.1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977) (citations omitted). Our court has clearly enunciated the elements of the duress defense:

[T]his Circuit follows the common law rule that duress is a defense only if the defendant reasonably feared immediate death or severe bodily injury which could be avoided only by committing the criminal act charged.

*Id.* (quoting *United States v. Nickels,* 502 F.2d 1173, 1177 (7th Cir.1974), *cert. denied,* 426 U.S. 911, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976)) (citations omitted). Other courts rely on a listing of the three required elements: "(1) an immediate threat of death or serious bodily harm; (2) a well-grounded fear that the threat will be carried out; and (3) no reasonable opportunity to escape the threatened harm." *United States v. Santos,* 932 F.2d 244, 249 (3rd Cir.1991); *United States v. Scott,* 901 F.2d 871, 873 (10th Cir.1990); *United States v. Charmley,* 764 F.2d 675, 676 (9th Cir.1985).

■ Fear, by itself, will not legally justify the commission of the criminal act. There must be evidence that the threatened harm was present, immediate, or impending. Nothing in this record reveals an *actual* threat of danger to Mr. Tanner, either in the visiting room when he took possession of the cocaine, or earlier. In support of the duress defense, fellow inmate Mr. Carbough testified that the defendant was "scared to death" and was bringing in drugs because his life was threatened. However, the other defense witness, Brenda Tanner, testified that she didn't believe there were death threats. Both of Mr. Tanner's witnesses told the jury that there had been no threats against the defendant in the visiting room. A jury could reason-

ably have concluded that there was no immediate threat to the defendant when he was smuggling in the cocaine.

But even if the jury was satisfied that Mr. Tanner had a reasonable and well-founded belief, when he committed the crime, that serious and immediate injury or death would come to him or his family, the defendant failed to offer evidence that he had no reasonable way of escaping that harm. The government gave ample evidence to prove that Mr. Tanner had at least four opportunities, during that visiting period, to escape the threatened harm by requesting protective custody from a prison guard. No request was made; nor was any other method attempted by the defendant to escape the harm. *See United States v. Beltran–Rios,* 878 F.2d 1208, 1213–14 (9th Cir.1989).

To satisfy a threshold showing of a duress defense, a defendant must introduce sufficient evidence as to all the elements of the defense. *United States v. Scott,* 901 F.2d at 873 (citing *United States v. Bailey,* 444 U.S. 394, 415, 100 S.Ct. 624, 637, 62 L.Ed.2d 575 (1980)). *See also United States v. Charmley,* 764 F.2d at 676; *United States v. May,* 727 F.2d 764, 765 (8th Cir.1984). We hold that Algienon Tanner failed to satisfy his preliminary burden of offering sufficient evidentiary support for the elements of his duress defense, and that the government's showing of the defendant's opportunities to escape the harm successfully rebutted the meager evidence offered by Mr. Tanner.

## CONCLUSION

For the foregoing reasons, we hold that a rational trier of fact could have found beyond a reasonable doubt that Algienon Tanner possessed with intent to distribute 55½ grams of cocaine. Having found no violation of the Speedy Trial Act and no abuse of the court's discretion in denying the defendant's motion for mistrial or continuance, we AFFIRM the district court's conviction of Algienon Tanner.