UNITED STATES of America,
Plaintiff–Appellee,

v.

George R. SOTELO, Defendant–
Appellant.

No. 95–2731.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 15, 1996.

Decided Aug. 13, 1996.

Donald J. Schmid (argued), Office of U.S. Atty., South Bend, IN, for plaintiff-appellee.

Mark S. Lenyo (argued), Allen, Fedder, Herendeen & Kowals, South Bend, IN, for defendant-appellant.

Before KANNE, ROVNER, and DIANE P. WOOD, Circuit Judges.

KANNE, Circuit Judge.

A jury convicted George R. Sotelo of multiple counts of mailing threatening and extortionate communications in violation of 18 U.S.C. § 876. Sotelo appeals his conviction on the ground that the district court erred in not giving the jury an instruction on the defense of duress. He appeals the part of his sentence severely restricting the persons with whom he may communicate while incarcerated in federal prison on the grounds that the district court lacked the authority to impose the restriction and that the restriction is an unconstitutional abridgement of his first amendment rights. We affirm the conviction and vacate and remand the sentence for modification.

## I

There can be no doubt that George Sotelo is a vicious and effective predator, even from the confines of a prison cell. In July 1990, Sotelo pleaded guilty to the rape of one elderly woman and the robbery of another. He was given a lengthy prison sentence and incarcerated at the Indiana State Prison. It was during that incarceration that Sotelo committed the crimes relevant to this case.

Sotelo learned of Carolyn Barlow, a grandmother who resided in the state of Washington, from a fellow inmate with whom Barlow had had a brief pen-pal relationship. In March 1992, Sotelo began writing to Barlow, and his initial letters were friendly, even romantic. Within four months, Sotelo began asking Barlow for money. She sent him money for a new television, a weight set, and a new pair of glasses, in addition to sending him $100 a month. Sotelo also called Barlow collect, and she visited him twice at the prison. Sotelo lied to Barlow regarding the reason for his incarceration (he told her he had been convicted of murder) and the remaining amount of his sentence (he told her he was to be released in 1995 when he was not entitled to be released until after 2020).

During Barlow's second and last visit in October 1993, she expressed reluctance toward continuing to give Sotelo money, explaining that he was becoming a financial burden. After that meeting, their relationship took a sinister turn. In subsequent letters and phone calls, Sotelo demanded that Barlow send him money because, if she did not, "bad guys" at the prison would kill him. He also told her that if she did not send money to people he specified, her life, as well as the lives of her daughter and granddaughters, would be in danger. Sotelo told Barlow that an ex-con was watching her house and would harm her if she failed to make the requisite payments. Sotelo also wrote Barlow that he would kill her if she did not send him money. Barlow complied with Sotelo's demands, and on several occasions she mailed money orders to the individuals Sotelo identified. Eventually, Barlow contacted the FBI, and the threatening communications ceased.

In an interview with FBI Special Agent James Parsell in September 1994, Sotelo admitted that he had lied to Barlow, telling her that he was in danger in order to obtain money from her. He also admitted to threatening Barlow, her daughter, and her grandchildren in his quest to obtain money from her.

After being indicted, but before trial, Sotelo began corresponding with another woman, Beth Bunch, who he had read about in a local paper. As before, Sotelo's early letters were friendly and romantic. Bunch initially wrote back but stopped corresponding with Sotelo after she began dating another man. Sotelo became irate. He called and wrote Bunch claiming that if she did not continue to write him he would hunt her down and kill her. He also threatened the life of her nephew, who was incarcerated at the same prison as Sotelo.

On April 4, 1995, a jury convicted Sotelo of three counts of mailing threatening communications and three counts of mailing communications with the intent to extort money, both in violation of 18 U.S.C. § 876. The district court sentenced Sotelo to 262 months of imprisonment to run consecutive to his state sentence. As a part of the imposition of sentence, the district court also ordered that:

> During his incarceration on this sentence, the defendant shall be prohibited from placing telephone calls to, or sending correspondence to, any person other than members of his family and persons who have notified the Bureau of Prisons, in writing that: (1) the person is aware of Mr. Sotelo's conviction for making extortionate threats from prison; (2) the person is aware of the remaining length of the defendant's sentence; and (3) the person is willing to correspond and/or speak with Mr. Sotelo. This provision shall not apply to legal correspondence or conversation. It is further ordered that the defendant shall not initiate, directly or indirectly, any contact with the victim, Carolyn Barlow, during the period of his incarceration or supervised release term.

The sentence also included a period of supervised release and an order of restitution.

## II

Sotelo's sole challenge to his conviction is that the district court erred in not giving the jury Sotelo's proffered duress instruction. Sotelo argues that he was entitled to a duress instruction because there was sufficient evidence presented at trial from which the jury could have found that he had to extort money from Barlow because he was being threatened by other inmates.

■ A defendant is entitled to a jury instruction on his theory of defense if the defendant satisfies four requirements: (1) the proposed jury instruction is a correct statement of the law; (2) the theory of defense is supported by the evidence; (3) the theory of the defense is not part of the charge; and (4) the failure to include the instruction would deny the defendant a fair trial. *United States v. Toney*, 27 F.3d 1245, 1249 (7th Cir.1994).

■ The defense of duress, also known as coercion, requires that the defendant establish three elements: (1) an immediate threat of death or serious bodily injury; (2) a reasonable fear that the threat will be carried out; and (3) no reasonable opportunity to avoid the threatened harm other than by committing the criminal act charged. *Toney*, 27 F.3d at 1248; *see also United States v. Bastanipour*, 41 F.3d 1178, 1184 (7th Cir. 1994); *United States v. Tanner*, 941 F.2d 574, 587 (7th Cir.1991), *cert. denied*, 502 U.S. 1102, 112 S.Ct. 1190, 117 L.Ed.2d 432 (1992). A defendant is entitled to an instruction on a duress defense only after he has produced sufficient evidence from which a rational jury could find all of the elements of the defense. *Toney*, 27 F.3d at 1248; *Tanner*, 941 F.2d at 588. We review *de novo* a district court's determination that a defendant failed to meet that burden. *Bastanipour*, 41 F.3d at 1183–84.

Sotelo did not take the stand, nor did he present any witnesses. Thus, the only evidence that could support a duress instruction must be found in the government's case. The district court found that Sotelo was unable to point to any evidence on the element of no reasonable opportunity to avoid, and we agree.

■ Before the district court, Sotelo relied exclusively on passages from the threatening letters to support his argument that there was sufficient evidence that he had no reasonable opportunity to avoid the threatened

harm except to extort money from Barlow. At most, the passages are relevant to the immediacy and seriousness of the threatened harm to Sotelo. None of them contain evidence from which a rational jury could infer that Sotelo lacked a reasonable opportunity to avoid the threatened harm by, for example, seeking protection from prison authorities. *See Tanner,* 941 F.2d at 588. Thus, we conclude the district court did not err in refusing to give Sotelo's duress instruction.

### III

■ Sotelo's challenge to his sentence focuses upon the portion of his sentence restricting the persons with whom he may communicate while incarcerated on his federal offenses to family members, legal counsel, and persons who contact the Bureau of Prisons and assent to receiving communications from Sotelo.[1] Sotelo argues that the district court's restriction is invalid on two grounds: (1) the district court lacked the authority to limit his communications while incarcerated, and (2) the restriction is an unconstitutional abridgment of his right to free speech. We only address Sotelo's first argument.

In support of the district court's authority to impose the communication restriction, the government relies upon 18 U.S.C. § 3553(a), which requires that a district court impose a sentence sufficient to meet certain enumerated purposes. Among these purposes is "the need for the sentence imposed ... to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). Sotelo has shown himself to be an effective predator barely slowed by incarceration. According to the government, the district court had the authority to impose the communication restriction because otherwise the court could not have discharged its responsibility to "protect the public from further crimes" of Sotelo.

■ However laudable the objective sought to be obtained, a district judge does not have the authority to impose a sentence that is not specifically authorized by statute. *In re Bonner,* 151 U.S. 242, 256–58, 14 S.Ct. 323, 325–26, 38 L.Ed. 149 (1894); *United States v. Ravoy,* 994 F.2d 1332, 1337 (8th Cir.1993); *United States v. Elkin,* 731 F.2d 1005, 1011 (2d Cir.), *cert. denied,* 469 U.S. 822, 105 S.Ct. 97, 83 L.Ed.2d 43 (1984); *United States v. Mazzei,* 521 F.2d 639, 646 (3d Cir.) (en banc), *cert. denied,* 423 U.S. 1014, 96 S.Ct. 446, 46 L.Ed.2d 385 (1975).

The authorized types of sentences are generally set forth at 18 U.S.C. § 3551(b) and include the staples of punishment—a term of imprisonment, probation, and fines. Section 3551(b) also references other sections that authorize forfeiture, notice to the defendant's victims, and restitution.

■ It is true that § 3582(d) authorizes a district court to restrict an inmate's communications while incarcerated; however, that section only authorizes such a restriction for individuals convicted of certain crimes, namely racketeering and drug offenses. 18 U.S.C. § 3582(d). But no federal statute nor any provision of the United States Sentencing Guidelines authorizes a district court to restrict the communications of an inmate as part of his sentence for mailing threatening communications.[2]

The only other cases involving challenges to an incarceration-communication restriction ordered by a district judge do not shed any light on the question of whether the type of blanket restriction imposed upon Sotelo is an authorized sanction. In *Wheeler v. United States,* the Ninth Circuit held that a district court could limit an inmate's postconviction communication with a former witness, her family, and military superiors. 640 F.2d 1116, 1123–26 (9th Cir.1981). The court reasoned that such a restriction may be proper pursuant to a district court's inherent authority to protect witnesses and insure the proper administration of justice. *Id.* at 1123–24.

---

1. Sotelo does not challenge the condition that he not communicate with Barlow during his incarceration or while on supervised release, and we will not concern ourselves with that portion of the sentence.

2. A district court does have the authority to impose a communication restriction as a condition of supervised release, regardless of the offense of conviction. *See* 18 U.S.C. § 3563(b)(7).

As we noted earlier, Sotelo does not contest the restriction that he not communicate with Carolyn Barlow, a government witness who testified against him. Therefore, unlike in *Wheeler*, the contested restriction of Sotelo's communications is not intended to protect an individual involved in Sotelo's criminal trial. The scope of the restriction is much broader, encompassing the public as a whole.

The Sixth Circuit in *United States v. Holloway* addressed the validity of a communication restriction substantially similar to the one imposed upon Sotelo. 740 F.2d 1373, 1381 (6th Cir.), *cert. denied*, 469 U.S. 1021, 105 S.Ct. 440, 83 L.Ed.2d 366 (1984). However, the Sixth Circuit only considered the constitutionality of the restriction and did not address the predicate question that we consider today: whether the imposition of a communication restriction is in the scope of a district court's sentencing authority.

We conclude that because there is no federal law authorizing an incarceration-communication restriction as part of a sentence ordered by a district court for an individual convicted of mailing threatening communications, the district court lacked the authority to impose the restriction at issue in this case. Congress could, of course, amend § 3582(d) to include the type of offense involved here—an action which would seem to have much to recommend it.

■ On the other hand, Congress has delegated authority over the treatment and discipline of inmates to the Bureau of Prisons. 18 U.S.C. §§ 3621, 4042. Pursuant to that grant of authority, the Bureau of Prisons has promulgated regulations governing the contact of inmates with persons outside the prison, and those regulations specifically authorize a warden to significantly restrict an inmate's communications with individuals outside the prison if, among other reasons, the inmate committed an offense involving the mails. 28 C.F.R. § 540.15(a)(5). Thus, the Bureau of Prisons could impose restrictions on Sotelo similar to those ordered by the district court.

■ Although the district court did not have the authority to impose the blanket communication restriction at issue in this case, the court certainly had the option to recommend that the Bureau of Prisons impose such a restriction. *See United States v. Jackson*, 70 F.3d 874, 878 (6th Cir.1995) (holding that district court lacked authority to order defendant to participate in drug rehabilitation program while incarcerated, but that district court could recommend that the Bureau of Prisons enroll defendant in such a program).

■ The contested restriction on communication ordered by the district court must be modified in order to bring it within the confines of the district court's authority. We therefore construe the contested restriction as a recommendation to the Bureau of Prisons to restrict Sotelo's communications in the manner prescribed by the district court, and the district court should so modify the sentence.[3]

For the foregoing reasons, the conviction of George R. Sotelo is AFFIRMED; and the sentence imposed is VACATED and the case REMANDED for modification of the sentence in accordance with this opinion.

---

3. Construing the restriction as a recommendation, and ordering that the sentence be so modified, means that the issue as to its constitutionality is not ripe for review. *See United Pub. Workers v. Mitchell*, 330 U.S. 75, 89–91, 67 S.Ct. 556, 564–65, 91 L.Ed. 754 (1947).