**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Mohammad Ali BASTANIPOUR,**
**Defendant–Appellant.**

**No. 94–1279.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 9, 1994.

Decided Dec. 6, 1994.

---

Helene B. Greenwald, Asst. U.S. Atty., Crim. Div., Barry Rand Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, Joseph D. Wilson (argued), Dept. of Justice, Crim. Div., Washington, DC, for plaintiff-appellee.

Thomas D. Decker (argued), Decker & Associates, Ronald J. Clark, Chicago, IL, for defendant-appellant.

Before POSNER, Chief Judge, EASTERBROOK, Circuit Judge, and GORDON, District Judge.[*]

MYRON L. GORDON, District Judge.

Mohammad Ali Bastanipour was convicted of possessing heroin with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1). Mr. Bastanipour appeals his conviction. We affirm.

## I. BACKGROUND

The facts underlying the conviction presently challenged by Mr. Bastanipour are as follows: Thaddeus Long, a government informant, first became acquainted with Mr. Bastanipour, an Iranian national, in 1987 when

---

[*] Honorable Myron L. Gordon, District Judge for the Eastern District of Wisconsin, is sitting by designation.

the latter informed Mr. Long of his desire to engage in transactions involving white heroin. At that time, Mr. Long had not as yet agreed to work with the government. Between 1988 and 1992, Mr. Long and Mr. Bastanipour had occasional contact. At a meeting between the two in August 1992, Mr. Bastanipour asked Mr. Long to put out "some feelers for some heroin customers." He also informed Mr. Long that he only wanted to deal in kilogram quantities of white heroin and suggested two alternate routes for transporting the heroin: from China through Pakistan to New York then to Chicago, or from Mexico to California and then to Chicago. Mr. Bastanipour explained that he would provide samples to Mr. Long of the heroin and that he wished to deal in large bills to facilitate the transfer of funds back to Iran.

Another meeting was held between Mr. Bastanipour and Mr. Long during the first week of September 1992. At this meeting, the defendant demanded that Mr. Long give him the money for the heroin before he turned over the drugs so that he could verify that the bills were not counterfeit. After this meeting, Mr. Long contacted the Federal Bureau of Investigation and agreed to cooperate with its investigation of Mr. Bastanipour.

Mr. Long and Mr. Bastanipour met again on September 19, 1992, at which time additional parameters were set by Mr. Bastanipour with regard to the proposed heroin transactions: no more than two kilograms of heroin would be sold in a given transaction, the price of the heroin would range from $175,000 to $200,000 per kilogram, and Mr. Bastanipour and Mr. Long would each receive between $15,000 and $30,000 per transaction. In addition, the defendant asked Mr. Long to obtain false identification for him in his mother's maiden name. Mr. Bastanipour explained that he needed the false identification so that he could leave town if his upcoming immigration hearing was unsuccessful and that the identification would also assist him in transferring funds generated from the drug transactions.

On the morning of September 29, 1992, the defendant met with Mr. Long and notified him that 15 kilograms of heroin had arrived in Chicago and were available for sale. Mr. Bastanipour gave Mr. Long six heroin samples for Mr. Long's customers. These samples consisted of 4.35 grams of 71 percent pure heroin.

Mr. Long next spoke with the defendant on October 2, 1992, by telephone. During this conversation, Mr. Bastanipour inquired whether Mr. Long's customers were pleased with the quality of the heroin. When Mr. Long explained that his putative customers were very pleased, Mr. Bastanipour discussed a possible date on which to consummate the transaction.

A number of telephone conversations and meetings occurred between Mr. Bastanipour and Mr. Long from October 2, 1992, through October 11, 1992. Over the course of these contacts, Mr. Bastanipour assured Mr. Long of the high quality of the heroin and discussed a plan to trade the money for the drugs. Ultimately, the two agreed to exchange the money for the heroin on Sunday, October 11, 1992. On that date, Mr. Bastanipour delivered the heroin at the prearranged site. Shortly thereafter, Mr. Long drove Mr. Bastanipour to a hotel where he showed Mr. Bastanipour a briefcase containing $200,000 in cash. Mr. Bastanipour was arrested when he attempted to leave the hotel room with the cash.

On May 27, 1993, a grand jury in the northern district of Illinois issued a one-count indictment charging Mr. Bastanipour with possession of heroin with intent to distribute it in violation of 21 U.S.C. § 841(a)(1). A jury convicted Mr. Bastanipour as charged on September 23, 1993, and he was sentenced to 20 years of imprisonment and ten years supervised release.

## II.  MOTION FOR DISCOVERY OF INVESTIGATIVE FILE

On the morning of his scheduled criminal trial on September 14, 1993, Mr. Bastanipour filed a motion in limine requesting disclosure of an investigative file in connection with the unrelated prosecution of the informant, Mr. Long, for bank fraud. Mr. Bastanipour sought disclosure of the file for the purpose

of uncovering "motivation, bias, and interest, and to determine if *Giglio* or *Brady* evidence exists,...." In addition, Mr. Bastanipour claimed that disclosure of the file would enable him to look for information concerning the nature and timing of the government's investigation of [Mr. Long]; ... participants, victims and agents; the onset of Mr. Long's awareness of his criminal liability; contacts made with him by the victim(s) and/or investigating agencies; the timing of the return of the Information; whether any government employee interfered with or attempted to discourage the prosecution;....

A hearing was held in the district court on this motion on September 14, 1993. During the hearing, the government represented that the plea agreement between it and Mr. Long contained "all agreements between Mr. Long and the government related to that conduct.... There are no other promises made." The government also informed the court that all *"Brady* or *Giglio"* information was contained in the plea agreement. The district court denied Mr. Bastanipour's motion and invited the government to produce the investigative file under seal for in camera review. The government submitted the file to the court on September 15, 1993.

Mr. Bastanipour argues on appeal that the district court's denial of his motion for discovery was contrary to Rule 16, Federal Rules of Criminal Procedure. He also urges that the denial offends the ruling of the United States Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), insofar as the information contained in the file might have been material to his defense. The defendant also maintains that the district court's ruling denying his motion for discovery violated his Sixth Amendment right to present witnesses in his own defense. We review a district court's denial of discovery in a criminal case for abuse of discretion. *United States v. Reed*, 2 F.3d 1441, 1446 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 898, 127 L.Ed.2d 90 (1994).

The government's duty to turn over evidence under both Rule 16, Federal Rules of Criminal Procedure, and *Brady* arises only where evidence is material to the defendant's defense. Rule 16(a)(1)(C), Federal Rules of Civil Procedure, provides (with emphasis added) that the

> government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs ... or copies thereof, which are within the possession, custody or control of the government, and which are *material* to the preparation of the defendant's defense....

Further, the United States Supreme Court in *Brady* held that upon request of the defendant the government is obligated under the due process clause of the Constitution of the United States to produce evidence in its possession that is both favorable to the accused *and* material to the issue of guilt or punishment. *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196. *See also United States v. Agurs*, 427 U.S. 97, 104, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976).

■ Evidence is "material" if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383. Moreover, due process requires the disclosure of evidence which impeaches the credibility of a key prosecution witness. *See Giglio v. United States*, 405 U.S. 150, 154–55, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972).

■ We find that the district court's denial of Mr. Bastanipour's motion for discovery of the government's investigative file of Mr. Long was a proper exercise of its discretion. Mr. Bastanipour's request to review the contents of the file was based on nothing more than his speculation that the file might contain evidence which he could use to impeach Mr. Long. There was no demonstration by the movant that material evidence was contained in the file or that any evidence was suppressed by the government. In the absence of such a showing, we cannot conclude that the defendant's due process rights were

violated. *See United States v. Romo*, 914 F.2d 889, 898–99 (7th Cir.1990), *cert. denied*, 498 U.S. 1122, 111 S.Ct. 1078, 112 L.Ed.2d 1183 (1991) (defendant not entitled to discovery material under *Brady* where there was not even a "hint" that impeaching evidence was contained therein or where he made no showing by affidavits or otherwise that any evidence was suppressed by the government). The fact that the government submitted the file to the district court for in camera review also negates any argument that the government suppressed favorable or material information. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 60, 107 S.Ct. 989, 1002, 94 L.Ed.2d 40 (1987).

■ Furthermore, Mr. Bastanipour has not established that there was a reasonable probability that disclosure of the investigative file would have affected the outcome of the trial. Had the investigative file, in fact, turned up the evidence that Mr. Bastanipour was searching for—evidence that Mr. Long had enlisted him in the drug transaction so that he could restore favor with the FBI—it would have been merely cumulative. This is so because Mr. Bastanipour presented evidence at trial showing that Mr. Long had initiated contact with him. Evidence that Mr. Long knew he was being investigated in connection with the bank fraud *before* the negotiations for the heroin sale began was also presented by the defendant. In addition, the record discloses that Mr. Bastanipour impeached Mr. Long on cross-examination, with his own testimony and with the testimony of Mr. Long's accomplice in the bank fraud, Kenneth Jurich.

As to Mr. Bastanipour's additional argument that his rights under the compulsory process clause of the Sixth Amendment were violated by the district court's denial of his motion for discovery, he failed to raise this argument before the district court, and therefore, has waived it on appeal. *United States v. Harty*, 930 F.2d 1257, 1261 (7th Cir.), *cert. denied sub nom. Gurgone v. United States*, — U.S. —, 112 S.Ct. 262, 116 L.Ed.2d 215 (1991).

### III. ADMISSIBILITY OF PRIOR NARCOTICS CONVICTION

In 1981, Mr. Bastanipour was convicted of narcotics and false statement offenses stemming from his arrival at O'Hare Airport in possession of four kilograms of heroin packed in caviar tins. Shortly before trial, Mr. Bastanipour moved to exclude evidence of his prior narcotics conviction. The district court reserved ruling on the defendant's motion until it was determined whether the defendant would present an entrapment defense and whether he would testify at trial. Thereafter, on the third day of trial, the government filed a motion in limine in which it sought the admission of the 1981 narcotics conviction under Rule 404(b), Federal Rules of Evidence, to show Mr. Bastanipour's intent and knowledge. The district court ultimately ruled that the 1981 narcotics conviction was admissible under Rule 404(b) as evidence of his knowledge and intent and in view of the fact that Mr. Bastanipour had pressed an entrapment defense. The district court also ruled that the 1981 narcotics conviction was admissible under Rule 609 for impeachment purposes.

Mr. Bastanipour argues that the district court's decision to admit the evidence of his prior narcotics conviction under Rules 404(b) and 609(a), Federal Rules of Evidence, was an abuse of discretion. The defendant correctly notes that a district court's decision to admit evidence under Rules 404(b) or 609(a), Federal Rules of Evidence, is reviewed for abuse of discretion. *See United States v. Nolan*, 910 F.2d 1553, 1559 (7th Cir.1990), *cert. denied*, 499 U.S. 942, 111 S.Ct. 1402, 113 L.Ed.2d 457 (1991) (relating to Rule 404(b), Federal Rules of Evidence); *United States v. Rein*, 848 F.2d 777, 781–82 (7th Cir.1988) (relating to Rule 609(a), Federal Rules of Evidence).

■ Rule 404(b), Federal Rules of Evidence, provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation,

plan knowledge, identity, or absence of mistake or accident.

In order to be admitted under Rule 404(b), Federal Rules of Evidence, evidence of prior bad acts must satisfy a four-part test: (1) the proffered evidence must be relevant to a matter in issue other than the defendant's propensity to commit the charged crime; (2) the prior bad act must be similar in nature and close in time to the crime charged; (3) the prosecution must establish that the defendant in fact committed the prior bad act; and (4) the probative value of the evidence must not be outweighed by its prejudicial effect. *United States v. Goodapple,* 958 F.2d 1402, 1406–07 (7th Cir.1992).

■ Mr. Bastanipour argues that the evidence of his prior narcotics conviction was improperly admitted as proof of intent as his intent to commit the crime was not an issue in the case. Mr. Bastanipour was charged with possession of heroin with intent to distribute it in violation of 21 U.S.C. § 841(a)(1). This court has held that knowingly and intentionally to possess with the intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1) is a specific intent offense. *Goodapple,* 958 F.2d at 1407. Nevertheless, evidence of prior drug convictions is not always relevant to prove intent under 21 U.S.C. § 841(a)(1). This is especially so where, as here, Mr. Bastanipour did not dispute that he had the requisite intent. In such situations, it is more likely than not that the prior bad act evidence will be used by the prosecution to create the improper inference "that a person who violates the law at one time has a bad character and therefore violated the law at a different time." *United States v. Beasley,* 809 F.2d 1273, 1278 (7th Cir.1987).

Although intent may not have been an appropriate exception for the district court to consider when assessing the admissibility of the prior bad act evidence in this case, we do not believe that the district court abused its discretion in admitting the evidence. This is so because the prior conviction evidence was relevant to rebut Mr. Bastanipour's defense of entrapment. We have previously held that evidence of a defendant's prior criminal acts is "admissible to prove predisposition in

an entrapment case, because in such a case the defendant's predisposition to commit the charged crime is legitimately at issue." *United States v. Swiatek,* 819 F.2d 721, 728 (7th Cir.), *cert. denied,* 484 U.S. 903, 108 S.Ct. 245, 98 L.Ed.2d 203 (1987).

The record also establishes that, similar to the instant offense, the prior narcotics conviction involved the importation of heroin and was committed only a few years after Mr. Bastanipour was released from incarceration on the prior offense. It is undisputed that Mr. Bastanipour committed the prior narcotics offense of which he was convicted. As to the fourth prong, Mr. Bastanipour has failed to identify any basis upon which this court could find that the prejudicial effect of this evidence outweighs its substantial probative value.

In view of the above, we find that the admission of Mr. Bastanipour's prior conviction under Rule 404(b), Federal Rules of Evidence, was well within the district court's discretion. Consequently, it is unnecessary for us to address Mr. Bastanipour's additional contention that such evidence should not have been admitted under Rule 609, Federal Rules of Evidence.

### IV. COERCION DEFENSE

At trial, the defendant attempted to present a defense of coercion; namely, that he had engaged in the heroin transaction solely to avoid deportation to Iran. In response, the government filed a motion in the district court to preclude the defendant from introducing evidence of coercion on the ground that he was unable to prove the elements of that defense. The district court granted the government's motion to the extent that it excluded the defendant's proffered expert testimony on the defense of coercion. In addition, the district court refused to give the defendant's proposed jury instruction on the coercion defense.

Mr. Bastanipour argues that the district court erred in concluding that his coercion defense failed as a matter of law and in holding that he was not entitled to present evidence of that defense in the form of expert testimony to the jury. A district court's determination that a defendant has failed to present sufficient evidence to become entitled to a jury instruction on a theory of

defense is reviewed de novo. *United States v. Santiago–Godinez,* 12 F.3d 722, 726 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1630, 128 L.Ed.2d 354 (1994). Our review of the district court's decision to bar expert testimony is limited to whether the court committed an abuse of its discretion. *United States v. Tanner,* 941 F.2d 574, 585 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1190, 117 L.Ed.2d 432 (1992).

■■■ Coercion is available as a defense only if the defendant reasonably feared immediate death or severe bodily injury which could be avoided only by committing the criminal act charged. *See Tanner,* 941 F.2d at 587. Further, to satisfy a threshold showing of a coercion defense, there must be sufficient evidence as to all of the elements of that defense. *See Tanner,* 941 F.2d at 588.

■■ The theory underlying Mr. Bastanipour's coercion defense was that engaging in the drug transaction with Mr. Long provided his sole means of avoiding deportation to Iran where he would face execution because he had converted to Christianity. This is so, he argues, because the heroin sale was the only way he could generate the money needed to challenge the deportation order or to obtain false identification if he was ordered deported.

We agree with Judge Aspen that the evidence fails to establish the requisite elements for a coercion defense. The threat identified by Mr. Bastanipour cannot be said to have been immediate, present or pending. *See Tanner,* 941 F.2d at 587. At the time of the commission of the offense at issue in this case, Mr. Bastanipour's order of deportation had been stayed pending resolution of his appeal of that order to this court and any appeal to the United States Supreme Court. He faced deportation only *if* this court upheld the deportation order and *if* he was unsuccessful in securing relief via review by the United States Supreme Court or via a new immigration hearing. Thus, at the time Mr. Bastanipour committed the instant of-

fense, the threat of deportation and injury was contingent and uncertain.

Moreover, even if Mr. Bastanipour's petition for review of the deportation order had been rejected by this court at the time of the commission of the offense, he would not have had a viable coercion defense. There is no merit to his contention that only through committing the charged offense could he alleviate the threat of deportation. Mr. Bastanipour had numerous legal avenues available to him to challenge the deportation order. Also, Mr. Bastanipour, a certified public accountant, could have generated money through legitimate methods.

Having failed to meet his burden as to his defense of coercion, the defendant was not entitled to a jury instruction on that defense. In addition, because Mr. Bastanipour's coercion defense was insufficient as a matter of law, we find no abuse of discretion in the district court's decision to exclude the expert testimony offered by Mr. Bastanipour on the issue of coercion. *See United States v. Trapnell,* 638 F.2d 1016, 1030–31 (7th Cir.1980).

## V. CONCLUSION

For the foregoing reasons, we affirm Mr. Bastanipour's conviction.