**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Willie E. QUINN, Defendant–Appellant.**

No. 95–3044.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 16, 1996.

Decided May 15, 1996.

James M. Warden (argued), Office of U.S. Atty., Indianapolis, IN, for plaintiff-appellee.

Steven J. Riggs (argued), Indiana Federal Community Defenders, Inc., Indianapolis, IN, for defendant-appellant.

Before EASTERBROOK, RIPPLE and EVANS, Circuit Judges.

RIPPLE, Circuit Judge.

Willie Allen Quinn entered a conditional plea of guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Prior to entering the plea, however, Mr. Quinn filed a motion to suppress evidence obtained during an investigatory stop conducted by officers of the Indianapolis Police Department. The district court denied the motion and, having reserved the right to do so, Mr. Quinn appeals the court's ruling on the suppression issue. For the reasons set forth in the fol-

lowing opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

During the morning hours of September 14, 1994, uniformed officers of the Indianapolis Police Department ("IPD") conducted a "street sweep" operation in the area of 16th and Bellefontaine Streets in Indianapolis.[1] At approximately 9:30 a.m., a number of marked IPD vehicles approached the intersection of 16th and Bellefontaine Streets. Several individuals, including a group of three men, were standing on the corner. As the police neared the intersection, IPD Officer Steven King, who was driving one of the marked vehicles, observed a clear plastic baggie being tossed on the sidewalk. Officer King believed the baggie to contain crack cocaine. He could not determine, however, which of the three men had thrown the baggie onto the ground.

The three men split up and began to walk away from the scene. One of the individuals walked southbound from the intersection; the other two men headed in the opposite direction. Officer King exited his vehicle and ordered the southbound individual, later identified as Willie Quinn, to stop. When Mr. Quinn did not comply with his initial request, Officer King repeated the command two or three more times before Mr. Quinn finally halted. The officer observed that Mr. Quinn was carrying a folded brown leather jacket in his arms. According to Officer King, the jacket was "wadded up in [Mr. Quinn's] arms[,] and he carried it almost like a football, close to his body." R.29, Transcript of Suppression Hearing, at 57.

Officer King ordered Mr. Quinn to accompany him back to the police car and to place the leather jacket on the car. As Mr. Quinn complied with these directives and placed the leather jacket on the hood of the police car,

---

1. In a "street sweep" operation, the IPD targets a neighborhood with an identified crime problem and then conspicuously enters the area with uniformed officers. The objective of such an operation is to deter and to detect the targeted activity.

Prior to conducting the "street sweep" that led to Mr. Quinn's arrest, the IPD had targeted the subject area as one that is known for drug trafficking.

Officer King heard a "thud" sound. According to Officer King, the "thud" sound caused him to suspect that a heavy object was concealed inside the jacket.

Officer King conducted a pat-down search to insure that Mr. Quinn was unarmed. No weapons or drugs were found on Mr. Quinn's person. The officer then patted the leather jacket and felt a hard object inside. According to Officer King, the object "certainly felt like a gun." R.29, Transcript of Suppression Hearing, at 57. Opening the jacket, he discovered a .22 caliber Remington rifle that had been sawed-off and modified into a handgun. Officer King placed Mr. Quinn under arrest and then returned to the corner to retrieve the baggie of suspected crack cocaine. Later that day, Officer King filed an incident report describing the circumstances of Mr. Quinn's arrest. Relying on this report, IPD Detective Arthur Scott executed an affidavit to justify Mr. Quinn's arrest. Neither document included a reference to the "throwdown" of the baggie.

Mr. Quinn was arraigned in the Superior Court of Marion County on state charges relating to his unlawful possession of the firearm. During the initial arraignment hearing, the state court judge examined the affidavit and concluded that the state lacked probable cause to hold Mr. Quinn. However, the court gave the deputy prosecutor "a seventy-two hour extension to further investigate the case and to determine whether or not there was probable cause." R.32, Defendant's Motion to Reconsider, Ex.A, at 2–3. When Mr. Quinn returned to court on September 20, 1994, the deputy prosecutor informed the court that her office had failed to prepare an amended affidavit. The court then dismissed the case for lack of probable cause.

Before Mr. Quinn was released from custody, however, the county prosecutor's office filed a supplemental affidavit from Officer King. The supplemental affidavit describes how Officer King had "observed a baggie of suspected crack cocaine being tossed on the sidewalk" prior to his encounter with Mr. Quinn. R.29, Transcript of Suppression Hearing, Def.Ex.2, at 1. Upon receiving this supplemental affidavit, the state court reinitiated proceedings against Mr. Quinn.

The state charges were dismissed when Mr. Quinn was indicted by a federal grand jury. Count I of the indictment charged Mr. Quinn with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Count II charged Mr. Quinn with possession of an unregistered firearm in violation of 26 U.S.C. §§ 5861(d) and 5871. Mr. Quinn filed a series of motions in the district court, including a motion to suppress the firearm that had formed the basis of the indictment.

Mr. Quinn called Officer King to testify at the suppression hearing. After hearing Officer King's testimony, the district court denied Mr. Quinn's motion to suppress the firearm. The court took the view that, under the circumstances, the officer's decision to stop and frisk Mr. Quinn was justified under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The court also upheld Officer King's pat-down and search of the leather jacket. Following the court's decision, Mr. Quinn entered a conditional plea of guilty to Count I of the indictment and was sentenced to 188 months' imprisonment followed by five years of supervised release.

## II

## DISCUSSION

Mr. Quinn submits that the district court erred in concluding that, at the time he was stopped by Officer King, the officers had an objectively reasonable, articulable suspicion that he had committed or was about to commit a crime.

### A.

We review the denial of a motion to suppress for clear error. *United States v. Butler,* 71 F.3d 243, 248 (7th Cir.1995). Given the highly fact-specific nature of a motion to suppress evidence, we give particular deference to the district court that had the opportunity to observe witnesses and to hear testimony on the issue. *United States v. Vega,* 72 F.3d 507, 514 (7th Cir.1995); *United States v. Saadeh,* 61 F.3d 510, 516 (7th Cir.),

*cert. denied,* —— U.S. ——, 116 S.Ct. 521, 133 L.Ed.2d 428 (1995). Reversal is appropriate only if the reviewing court is left with "the definite and firm conviction that a mistake has been made." *Butler,* 71 F.3d at 248; *United States v. Tilmon,* 19 F.3d 1221, 1223 (7th Cir.1994).

 Our discussion begins with the well-established principles that govern police-citizen encounters under the Fourth Amendment. Mr. Quinn contends—and the United States does not dispute—that his compliance with Officer King's order to stop amounts to a "seizure" implicating the strictures of the Fourth Amendment. *See California v. Hodari D.,* 499 U.S. 621, 626–27, 111 S.Ct. 1547, 1550–51, 113 L.Ed.2d 690 (1991) (noting that submission to an officer's show of authority amounts to a "seizure"); *Kernats v. O'Sullivan,* 35 F.3d 1171, 1178 n. 4 (7th Cir.1994) (same). The parties appear to agree, moreover, that Officer King's initial apprehension and pat-down search of Mr. Quinn is properly characterized as an investigatory stop not rising to the level of an arrest. We agree with this characterization of the encounter. Accordingly, we evaluate Mr. Quinn's claim under the standards established for investigatory stops in *Terry v. Ohio* and its progeny.

In *Terry,* the Supreme Court held that a person may be stopped for brief questioning and a pat-down search if the police are able to point to "a reasonable suspicion of criminal activity." *Terry,* 392 U.S. at 21–22, 88 S.Ct. at 1879–81; *United States v. Robinson,* 30 F.3d 774, 782 (7th Cir.1994). Although it is "a quantum of proof less demanding than probable cause," *Terry,* 392 U.S. at 21–22, 88 S.Ct. at 1879–81, an "inchoate and unparticularized suspicion or 'hunch'" will not suffice. *Id.* at 27, 88 S.Ct. at 1883. Rather, reasonable suspicion requires "some minimal level of objective justification for making a stop."

*United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting *INS v. Delgado,* 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)). In determining whether a particular police-citizen encounter was supported by reasonable suspicion, courts must consider the totality of circumstances known to the officer at the time of the stop. *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981). "Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.*

 Applying the standards outlined above, however, we agree with the district court that Officer King had objectively reasonable grounds to suspect Mr. Quinn of criminal activity. Officer King encountered Mr. Quinn in a high crime area known for drug trafficking.[2] As the police approached a small group of men standing on the corner, Officer King observed one of their number drop a baggie that appeared to contain illegal narcotics. When the police drew nearer still, the members of that group continued to behave suspiciously by scattering and then attempting to head off in opposite directions. *See Tom v. Voida,* 963 F.2d 952, 957 (7th Cir.1992) (noting that flight is "certainly a relevant and probative factor" in determining whether officer had reasonable suspicion); *see, e.g., United States v. Sharpe,* 470 U.S. 675, 683 n. 3, 105 S.Ct. 1568, 1574 n. 3, 84 L.Ed.2d 605 (1985) (evasive actions relevant in determining whether officers had reasonable suspicion); *United States v. Cardona–Rivera,* 904 F.2d 1149, 1153 (7th Cir.1990) (same). Mr. Quinn gave the officer further ground to suspect him of criminal activity when he failed to yield to the officer's initial command to halt. *See United States v.*

---

**2.** In *United States v. Evans,* 994 F.2d 317 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 335, 126 L.Ed.2d 280 (1993), this court explained that, standing alone, the defendant's presence in a high crime area is an insufficient ground upon which to conduct a search. *Id.* at 322. *Evans* itself makes clear, however, that courts may consider the defendant's presence in a high crime area as part of the totality of circumstances confronting the officer at the time of the stop. *See*

*id; see, e.g., United States v. Packer,* 15 F.3d 654, 658–59 (7th Cir.1994) (citing *United States v. Lyles,* 946 F.2d 78 (8th Cir.1991)); *cf. United States v. Burrows,* 48 F.3d 1011, 1016 (7th Cir.) (noting, in the course of upholding the use of a protective sweep, that the arrest took place in an area where other crimes were known to have occurred), *cert. denied,* —— U.S. ——, 115 S.Ct. 2632, 132 L.Ed.2d 872 (1995).

*Weaver*, 8 F.3d 1240, 1244 (7th Cir.1993) (noting that efforts to evade officers' reasonable request to stop fueled their suspicions of suspect's criminal involvement).

■ Mr. Quinn contends that the district court erred in relying on the "throwdown" to support a finding of reasonable suspicion. According to Mr. Quinn, Officer King's belated claim that he witnessed a throwdown of narcotics is wholly unsupported by credible evidence. Rather, he contends, the record supports the conclusion that no contraband was present prior to the encounter: (1) Officer King did not mention the alleged throwdown in his September 14, 1994 incident report; (2) The initial affidavit did not mention the alleged throwdown; (3) The illegible "Date Received" entries on the IPD property room voucher suggest that Officer King did not deposit the baggie in the IPD property room until several days after Mr. Quinn's arrest; and (4) The contents of the baggie were destroyed by the IPD without first being tested. Without credible evidence to support the alleged throwdown, Mr. Quinn concludes, Officer King lacked reasonable suspicion to conduct an investigatory stop.

Through his testimony at the suppression hearing, Officer King explained the circumstances surrounding his reporting of the arrest and the IPD's handling of the baggie. His testimony suggests that his initial report did not include a reference to the throwdown because the baggie could not be attributed to any particular person. Officer King testified that, immediately after taking Mr. Quinn into custody, he discussed the presence of the baggie with other officers at the scene. Because the officers were unable to link the baggie with a particular individual, no attempt was made to charge anyone with the possession of the suspected narcotics. Officer King further explained that, after submitting the initial affidavit, he was notified that the prosecutor required additional information concerning Mr. Quinn's arrest. Following this conversation, on September 18, 1994, he filed a more detailed incident report and affidavit that included a reference to the throwdown of suspected crack cocaine.

Officer King further testified that, after discussing the presence of the baggie with supervisory officers at the scene, he was instructed to book the baggie and its contents into the IPD property room. He explained that, because the baggie could not be linked to any particular individual and because it would not be used as evidence, the baggie was transported to the IPD property room so that it could be destroyed. With respect to IPD's failure to test the contents of the baggie, Officer King testified:

Q. Because there was going to be no effort to prosecute anyone for the possession of that alleged controlled substance, was there any effort made to do a laboratory analysis, to test and see if in fact it was crack cocaine?

A. My understanding is no test was done based on the fact that it was not going to be used as evidence.

R.29, Transcript of Suppression Hearing, at 62–63.

The district court found Officer King to be "absolutely credible." R.43, Transcript of Hearing on Motion to Reconsider, at 14. On appeal, such a determination is conclusive unless the district court has credited exceedingly improbable testimony. *See United States v. Veras*, 51 F.3d 1365, 1370 (7th Cir. 1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 540, 133 L.Ed.2d 444 (1995). Having reviewed the transcript of the suppression hearing and the findings of the district court, we find nothing improbable about Officer King's testimony concerning the reporting of the arrest and the IPD's handling of the baggie. Accordingly, we decline to disturb the credibility determination made by the district court. *See id.*; *United States v. McGuire*, 957 F.2d 310, 314 (7th Cir.1992).

In an attempt to support his claim that Officer King invented the throwdown of suspected crack cocaine after the fact in order to bolster the deficient initial affidavit, Mr. Quinn claims that the handwritten "Date Received" entries on the IPD property room voucher for the baggie are illegible. According to Mr. Quinn, these allegedly illegible entries indicate that Officer King did not book the baggie into the property room until September 19, 1994.

The district court had no difficulty discerning that the baggie had been booked into the IPD property room on September 14, 1994—the day of the arrest. The record supports this determination. In addition to his questionable interpretation of the document itself, Mr. Quinn failed to explain how his reading of the "Date Received" as September 19, 1994 squares with the fact that a clearly stamped notation on the voucher indicates that the baggie was destroyed on September 16, 1994. We note, moreover, that the serial number of the IPD property room voucher used to book the baggie of suspected crack cocaine directly follows the serial number found on the voucher used to book the firearm seized from Mr. Quinn. This succession of serial numbers further supports the government's contention that the baggie and the firearm were booked at the same time—the day of Mr. Quinn's arrest.

■ We are of the opinion, therefore, that Officer King's initial apprehension of Mr. Quinn amounts to a valid *Terry* stop supported by reasonable suspicion. We agree with the district court, moreover, that Officer King's subsequent decision to pat down Mr. Quinn and his leather jacket was also proper. Under *Terry*, a law enforcement officer may take reasonable measures to determine whether a suspect is armed "[w]hen the officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." *Terry*, 492 U.S. at 24, 109 S.Ct. at 2778; *see Ybarra v. Illinois*, 444 U.S. 85, 92–93, 100 S.Ct. 338, 342–43, 62 L.Ed.2d 238 (1979). Under the circumstances, Officer King certainly had reasonable suspicion to believe that Mr. Quinn was armed and presently dangerous. The presence of the baggie, Mr. Quinn's failure to yield to Officer King's initial command to halt, the manner in which Mr. Quinn carried his jacket, and the "thud" sound heard when Mr. Quinn placed the jacket on the hood of the car were more than sufficient to justify the frisk of Mr. Quinn and the pat-down of his leather jacket.

### B.

In a related claim, Mr. Quinn contends that the district court erred in failing to compel the government to produce the original IPD property room voucher for the baggie of suspected crack cocaine. Mr. Quinn sought the original voucher under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). According to Mr. Quinn, the government's only response to his requests for the original voucher—an unclear facsimile copy—was insufficient to discharge the government's burden under *Brady*. Mr. Quinn asks this court to remand the case to the district court for an evidentiary hearing at which the government must produce the original property room voucher.

■ In order to succeed on a *Brady* claim, "the defendant must show that the evidence was favorable, suppressed, and material to his case." *Veras*, 51 F.3d at 1374. "Evidence is 'material' if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bastanipour*, 41 F.3d 1178, 1181 (7th Cir.1994) (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985)). " 'Reasonable probability' arises where the suppression of the evidence undermines our confidence in the trial." *United States v. Ashley*, 54 F.3d 311, 313 (7th Cir.), *cert. denied*, — U.S. ——, 116 S.Ct. 232, 133 L.Ed.2d 161 (1995).

■ Applying these standards to the facts of the present case, we conclude that Mr. Quinn has failed to show any "reasonable probability" that his possession of the original property room voucher would have resulted in the suppression of the firearm. *See Bastanipour*, 41 F.3d at 1181. The district court found Mr. Quinn's argument from the property room voucher to be "incredible," and our own examination of the record supports this finding. Mr. Quinn's contention that the handwritten entry is illegible is less than compelling, and the serial number on the voucher suggests that the baggie was booked on September 14, 1994—the same day as the firearm. The voucher also bears a clearly stamped notation indicating that the baggie was destroyed on September 16, 1994. Under these circumstances, therefore, there

is no reason to believe that the original document would support Mr. Quinn's strained interpretation. Accordingly, Mr. Quinn's *Brady* claim must fail.

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED