### UNITED STATES of America, Plaintiff–Appellee,

v.

### Ronald D. BROWN, Jr., Defendant–Appellant.

### No. 98–4297.

United States Court of Appeals, Seventh Circuit.

Argued May 20, 1999.

Decided Aug. 18, 1999.

Barry D. Glickman (argued), Office of the United States Attorney, Indianapolis, IN, for Plaintiff–Appellee.

Jack F. Crawford (argued), Crawford & Rader, Indianapolis, IN, for Defendant–Appellant.

Before POSNER, Chief Judge, and EASTERBROOK and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Ronald Brown pleaded guilty to a charge of possession of five or more grams of cocaine base ("crack") with intent to distribute and was sentenced to 120 months in prison. As part of his plea agreement and under Fed.R.Crim.P. 11(a)(2), he reserved his right to appeal the district court's denial of his motion to suppress evidence on the grounds that the drugs were seized as part of an illegal pat-down search. He appeals, and we affirm.

This case began in the early afternoon of June 8, 1998, in Indianapolis, Indiana, when Indiana State Trooper Dean Wildauer received a radio call from the FBI. The FBI asked Wildauer to find and stop a blue Chevy sports utility vehicle with a certain license plate number, which the FBI believed was involved in a large-scale drug operation, and to identify the occupants of the car. Shortly thereafter, Wil-

dauer saw a blue Chevy with that license plate number going eastbound on 38th Street near Arlington Avenue. He believed that it was speeding, but was not close enough to get a reading. He followed and when he was close enough, he determined that the car was going 48 m.p.h. in a 40 m.p.h. zone and also that it was following other cars too closely in violation of Indiana traffic laws. Wildauer flashed his lights and pulled the Chevy over east of Alcase Street on 38th Street, a high crime area where there was drug and gang activity and where there had recently been several shootings. The car did not stop immediately but drove about another 50 yards.

Wildauer exited his patrol car and approached the driver's side of the Chevy. Through its tinted windows he saw, in addition to the driver, two passengers, one in the front and one in the rear seat. Wildauer identified himself, explained that he had pulled the Chevy over for traffic offenses, and requested the driver's license and registration. Brown, the defendant here, produced these documents. While standing by the driver's window, Wildauer smelled a very strong scent of marijuana smoke, an odor he was trained to recognize and was familiar with from hundreds of drug arrests. Wildauer asked Brown to get out of the Chevy and approach the patrol car. Brown did so, but appeared very nervous to Wildauer, more nervous than would be called for in a routine stop for speeding. Brown would not make eye contact and kept glancing back to the Chevy. As Wildauer spoke with Brown, he noticed that the passengers in the Chevy had lowered the tinted windows. Wildauer got into the patrol car and called for backup, telling the dispatcher that he had stopped a car and that illegal drugs might be involved.

Wildauer asked Brown if he was carrying any "guns, knives, or pistols" or any marijuana. Despite Brown's denials, Wildauer decided to make a pat-down search of Brown's clothing. Brown was wearing baggy clothes and several layers of pants. In this initial search, Wildauer found two hard objects either of which he thought might be a weapon. The first was in Brown's left front pants pocket and the second was in his groin area, which, Wildauer's experience told him, is a common place to carry a pistol. This second object he estimated to be about the size of a ping-pong ball and might have been the butt of a small caliber handgun. Around this time Wildauer's backup, Indiana State Trooper Troy Sunier, arrived. Wildauer told Sunier about the smell of marijuana smoke and his belief that Brown had a gun.

Wildauer then told Brown to face away from him and did a second pat-down search to determine what the hard objects were. He reached into Brown's pockets and felt for the first hard object which he initially thought might be a gun. It turned out to be a cell phone, two pagers, keys, and a little less than $800 in cash. He put these back and felt around the area of Brown's groin to reach for the second hard object. At this point, Brown spun around, shoved Wildauer, and bolted. Wildauer yelled "Gun! Gun!" to Sunier and shouted at Brown to stop. Both officers then chased Brown and brought him down after a brief struggle.

Brown was arrested and searched incident to arrest. In his groin area, tied to the drawstrings of his pants, was a Crown Royal bag containing three rocks of crack cocaine, each somewhat smaller than a ping-pong ball and wrapped individually in a plastic baggie, and stacked in a sort of cylindrical shape. Brown was not armed. A half-smoked marijuana joint was discovered when the Chevy was searched in connection with the arrest. Brown was also given a written traffic citation for speeding.

Brown filed a motion to suppress the evidence of the crack cocaine, arguing that it was the product of an illegal search. A hearing was held September 4, 1998, and the district court denied the motion. Brown then entered a conditional guilty

plea, reserving the right to appeal the denial of his motion to suppress, which he now does.

Brown does not dispute the legality of Officer Wildauer's traffic stop, recognizing that a traffic stop is ordinarily reasonable under the Fourth Amendment if the officer has probable cause to believe that there has been a motor infraction, regardless of the officer's subjective motives. *Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Brown concedes that he could reasonably have been pulled over for speeding and following other traffic too closely, even though Wildauer's motivation was to further an FBI drug investigation.

Brown's appeal is based, rather, on a challenge to Wildauer's pat-down search leading to the discovery of the three rocks of crack. This pat-down search, Brown argues, violated the Fourth Amendment because Wildauer could not have had reasonable suspicion of criminal activity or danger to himself or others under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Accordingly, Brown maintains, the fruits of that search should have been suppressed pursuant to the exclusionary rule barring use of illegally obtained evidence against a criminal defendant.

Under *Terry,* a person may be stopped for brief questioning and a pat-down search without a warrant if two conditions are met. First, the officer must be able to point to " 'a reasonable suspicion of criminal activity.' " *United States v. Quinn,* 83 F.3d 917, 921 (7th Cir.1996) (internal citations omitted). "Reasonable suspicion" is " 'a quantum of proof less demanding than probable cause,' " *id.,* but a " 'hunch' will not suffice." *Id.* There must be "some minimal level of objective justification for making a stop." *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). The officer must be able to set forth "specific and articulable facts" which, based on " 'the totality of the circumstances—the whole picture,' " are "sufficient to give rise to [the] reasonable suspicion" of criminal activity. *United States v. Johnson,* 170 F.3d 708, 713 (1999) (*quoting Sokolow,* 490 U.S. at 8, 109 S.Ct. 1581). Second, the rationale of the pat-down is self-defense or defense of others. To justify a warrantless pat-down search without probable cause, the officer must also be able to point to specific and articulable facts indicating that the individual may be armed and present a risk of harm to the officer or to others. *Id.* (*citing Terry,* 392 U.S. at 26–27, 88 S.Ct. 1868).

In reviewing a district court's decision on a motion to suppress, we review *de novo* the ultimate conclusion that the police did not have reasonable suspicion to stop or search the individual, but we review all findings of historical fact and credibility determinations deferentially, under the clear error standard. *Johnson,* 170 F.3d at 712–13 (*citing Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). We consider first whether Officer Wildauer had articulable grounds for reasonable suspicion that Brown might be armed and dangerous sufficient to justify his decision to conduct the initial pat-down search. Like other forms of investigative detention, a traffic stop must be reasonably related in scope to the circumstances which justified the interference in the first place. *See United States v. Finke,* 85 F.3d 1275, 1278 (7th Cir.1996). Although the confrontation between a police officer and a citizen stopped for a traffic violation can be fraught with danger, *see Michigan v. Long,* 463 U.S. 1032, 1047–48 & n. 13, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); *Pennsylvania v. Mimms,* 434 U.S. 106, 110, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), this fact alone does not justify a pat-down, and the caselaw does not support the view that "an officer may frisk the occupants of any car stopped for a traffic violation." *Id.* at 110 n. 5, 98 S.Ct. 330.

Here, however, Officer Wildauer could point to several distinct articulable bases

for reasonable suspicion under *Terry.* These included: (1) FBI surveillance of the Chevy as a possible part of a large-scale drug operation; (2) the smell of marijuana smoke from the car; (3) Brown's unusually nervous demeanor, including his failure to make eye contact, and his glancing back to the Chevy, where (4) the other occupants rolled down the tinted windows during the traffic stop; and (5) the fact that the stop occurred in a high crime area where there was gang and drug activity and had been recent shootings. The district court credited Wildauer's testimony as to these facts and, lacking any plausible objections, we defer to its factual determinations.

■ The indications that Brown might be involved with drugs—the fact of the FBI surveillance, enhanced by the strong marijuana smoke odor in his vehicle—contributed to reasonable suspicion that Brown was armed and dangerous. Drug dealing is a "crime infused with violence." *United States v. Gambrell,* 178 F.3d 927, 929 (7th Cir.1999) (knock-and-announce context) (internal quotation omitted). Brown objects that Wildauer did not know who in particular was the object of the surveillance or responsible for the marijuana smoke, but the standard is whether the pat-down search is justified in the totality of circumstances even if each individual indicator would not by itself justify the intrusion. *See United States v. Duguay,* 93 F.3d 346, 350 (7th Cir.1996) (citing precedents which have upheld investigatory stops in light of all the circumstances, despite presence of several questionable factors).

■ Here the totality of the circumstances also included Brown's demeanor, which was more nervous than one would expect in a routine traffic stop, and his failure to meet Wildauer's gaze. Nervousness or refusal to make eye contact alone will not justify a *Terry* stop and pat-down, *see United States v. Jerez,* 108 F.3d 684, 694 (7th Cir.1997), but such behavior may be considered as a factor in the totality of

circumstances. *See Finke,* 85 F.3d at 1282 n. 4 (citing cases). The totality of the circumstances also included Brown's repeatedly glancing back towards the car in question while its occupants rolled down the tinted windows. Brown gives us no reason to doubt these factual findings. Neither does he suggest any other innocent explanation which might plausibly account for his excessive nervousness.

■ Finally, the exchange took place in a high crime area where there had been drug activity, shootings, and gang violence. Although " 'the fact that appellant was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct,' " *Jerez,* 108 F.3d at 694 (*quoting Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979)), "courts may consider the defendant's presence in a high crime area as part of the totality of circumstances confronting the officer at the time of the stop." *Quinn,* 83 F.3d at 922 n. 2. The police do not have carte blanche to pat down anyone in a dangerous neighborhood, but Brown had been stopped for speeding while driving a car under surveillance for drug trafficking and redolent of marijuana smoke. He was excessively nervous, refusing to meet the officer's gaze and repeatedly glancing back towards the car as his passengers rolled down its tinted windows—*and* he was in a bad neighborhood. Against this background, Officer Wildauer had a reasonable suspicion that Brown might be armed and dangerous which was sufficient to support his decision to conduct the pat-down search.

■ We now address whether, having conducted the initial pat-down search, Officer Wildauer had articulable grounds to proceed to the second search and whether this was justified in its extent and manner. In this search, Wildauer sifted the contents of Brown's pockets to determine whether Brown was armed and located in Brown's groin area a hard object some-

what smaller than a ping-bong ball. Wildauer took this object to be a gun butt, but it turned out to be the package of crack cocaine that Brown asks us to suppress. Because "[t]he sole justification of the [pat-down] search in [such a] situation is the protection of the police officer and others nearby," it must therefore be "confined in scope to an intrusion reasonably designed to discover [weapons]." *Terry,* 392 U.S. at 29, 88 S.Ct. 1868. An officer is not justified in conducting a general exploratory search for evidence under the guise of a stop-and-frisk. See *Minnesota v. Dickerson,* 508 U.S. 366, 378, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).

 Brown contends that Wildauer must have been conducting an exploratory search because he lacked reasonable suspicion that the hard object might have been a weapon. The argument is somewhat unclear. Brown offers us a rhetorical question ("Was it reasonable?"), an unsupported claim that it would appear "more reasonable" to think that the hard object was drugs than to think it was a gun butt, and a conclusory assertion (Wildauer was on "an exploratory search for narcotics"). If Brown's reasoning is construed as a deductive argument, it does not follow. Even if Wildauer would have been more reasonable to think the hard object was drugs rather than a gun, that does not mean he would have been unreasonable to conclude that it was a gun and not drugs. On the contrary, in the circumstances, it would have been reasonable to think it was a gun—as Brown himself admits: "Better safe than sorry." *See, e.g., United States v. Swann,* 149 F.3d 271, 276 (4th Cir.1998) (reasonable for officer to search unknown hard object in sock which was approximately the same size and shape as a box cutter).

If, however, Brown means to raise a doubt as to whether Wildauer actually *thought* that Brown was armed, suggesting that Wildauer really must have thought not and proceeded with a search for drugs rather than a gun, Brown fails to overcome the deference we give to the district court's factual and credibility determinations. The district court's finding that Wildauer thought that Brown was armed is not clearly erroneous because, among other things, Wildauer shouted "Gun! Gun!" to Officer Sunier when Brown tried to flee. This suggests that in the previous instant Wildauer thought he was in fact searching for a gun. In any case the test is objective, not subjective: "whether a reasonably prudent man in the circumstances would [have been] warranted in the belief that his safety or that of others was in danger." *Terry,* 392 U.S. at 27, 88 S.Ct. 1868. A reasonably prudent person would have been so warranted here.

We AFFIRM the decision of the district court denying Brown's motion to suppress.