**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Anton J. WILLIAMS, Defendant–
Appellant.**

No. 02–3764.

United States Court of Appeals,
Seventh Circuit.

Argued July 8, 2003.

Decided July 30, 2003.

Before KANNE, ROVNER, and
WILLIAMS, Circuit Judges.

ORDER

Anton Williams was riding in a car stopped for a traffic violation when a police officer patted him down and found a gun. Williams later pleaded guilty to possession of a firearm by a felon, 18 U.S.C. § 922(g), but preserved the right to challenge on appeal the denial of his motion to suppress the gun. Because the police officer had reasonable suspicion to conduct the pat-down, we affirm the judgment of the district court.

On February 13, 2002, police stopped the car in which Williams was riding because the windshield was obstructed by a radar detector and items hanging from the rearview mirror. The parties do not dispute what happened during the traffic stop. When Officer Darlington observed the violation, he intended to issue a warning and direct the driver to remove the items. But as soon as he turned on his emergency lights, Darlington noticed that the back-seat passenger–later identified as Williams–continuously glanced back nervously at the approaching squad car. Darlington pulled over behind the other car, and while he was speaking to the driver he observed that Williams appeared to be avoiding eye contact with him. After obtaining a license and insurance card from the driver, Darlington asked Williams and the other passenger for identification. When both passengers responded that they were not carrying identification, Darlington returned to his squad car to check

the driver's information. At that time he also called for backup.

While in his squad car Officer Darlington noticed that Williams was moving around in the back seat as if he was trying to conceal something. At the hearing on the motion to suppress, Darlington explained that he saw Williams "moving slightly to his left with ... his right shoulder elevating as if he was trying to conceal something with his right hand." Darlington continued to watch Williams while confirming the validity of the driver's documents. He then returned to the vehicle with his backup officer and directed Williams to exit the car. Darlington asked Williams if he was carrying anything that could "injure or hurt" the officer, but Williams did not answer and instead asked what was going on. Darlington repeated the same question two more times before Williams finally answered, "No." Darlington then asked Williams for his name, which Williams gave as "Allen J. Morris." Not satisfied, Darlington questioned the driver and the other passenger about Williams's identity, eventually discerning that Williams had given a false name. Darlington then handcuffed Williams, and the backup officer began patting him down. During the pat-down, the backup officer again asked for identification, and Williams reached his handcuffed hands toward his coat pocket. The backup officer stopped him and, after discovering a weapon in that pocket, arrested him. The entire stop took slightly more than ten minutes.

Williams does not dispute that Officer Darlington properly stopped the car in which he was riding because the driver had committed a traffic violation by obstructing the windshield. *See* 625 Ill. Comp. Stat. 5/12–503(c) (2003). And, of course, an officer conducting a valid traffic stop can detain the occupants of the car long enough to accomplish the purpose of the stop. *United States v. Childs,* 277 F.3d 947, 953 (7th Cir.2002). During that time the officer can order passengers to exit the car, *Maryland v. Wilson,* 519 U.S. 408, 414–15, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997), or ask them questions, *Childs,* 277 at 953–54. Further, if a police officer has reasonable suspicion that a detained individual is armed or dangerous, he may conduct a protective pat-down search of the detainee's outer clothing. *Knowles v. Iowa,* 525 U.S. 113, 117–18, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998); *United States v. Hendricks,* 319 F.3d 993, 1004 (7th Cir. 2003). Although "reasonable suspicion" is something short of probable cause, the officer must have more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry v. Ohio,* 392 U.S. 1, 28, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Whether reasonable suspicion exists is "based on the totality of the circumstances even if each individual indicator would not by itself justify the intrusion." *United States v. Brown,* 188 F.3d 860, 864 (7th Cir.1999). An officer has reasonable suspicion that the detainee poses a danger if "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry,* 392 U.S. at 27, 88 S.Ct. 1868.

At the hearing on the motion to suppress, Officer Darlington asserted that he had reasonable suspicion because Williams looked nervously at the approaching squad car, avoided eye contact, moved furtively within the car, and gave a false name. The district court, citing *Brown,* 188 F.3d at 865, opined that Williams's nervousness and refusal to make eye contact could not have justified the pat-down but nevertheless reasoned that all four factors combined gave rise to reasonable suspicion. The government accepts the district court's reading of *Brown,* but we note that *Brown* says only that "[n]ervousness *or*

refusal to make eye contact alone will not justify a *Terry* stop and pat-down." 188 F.3d at 865 (emphasis added). *Brown* expresses no opinion about whether nervousness *and* refusal to make eye contact would justify patting down a detainee legitimately stopped for other reasons, and we found no case answering that question in this circuit or any other. Because there were other factors justifying Darlington's search, however, we need not answer this question.

On appeal Williams argues that Darlington's concerns about him were "unfocused and vague" and thus did not establish reasonable suspicion to believe that he was armed or dangerous. Williams notes that Darlington ordered him out of the car simply because he had glanced over his shoulder at the approaching squad car and had refused to make eye contact, behavior that Williams says was not enough to warrant Darlington's concern for his safety. But as noted above, Darlington did not need reasonable suspicion to question Williams, *Childs,* 277 F.3d at 953–54, or to get him out of the car, *Wilson,* 519 U.S. at 414–15, 117 S.Ct. 882. Williams also reasons that Darlington could not have feared for his safety because he did not immediately convey that fear when the backup officer arrived. But Darlington was entitled to call for backup without reasonable suspicion, so this argument is a nonstarter. *See McNair v. Coffey,* 279 F.3d 463, 467 (7th Cir.2002) (noting that police "may call extra cars to the scene to ensure that violence does not erupt").

■ Williams also argues that Darlington improperly detained the occupants of the car because he would have completed the traffic stop sooner if he had not paused to question them. This argument completely misses the point; Darlington was justified in detaining the car's occupants– even if only to order them out of the car

and to ask them questions–for the period necessary to complete the stop, as long as the detention was "reasonably related in scope to the circumstances that justified the stop in the first place." *United States v. Jackson,* 300 F.3d 740, 745 (7th Cir. 2002). A detention is reasonably related if an officer "diligently pursued a means of investigation that was likely to confirm or dispel [his] suspicions quickly." *United States v. Sharpe,* 470 U.S. 675, 686, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). After asking Williams to get out of the car, Darlington immediately asked Williams if he was carrying a weapon in order to dispel his concern that Williams could be harmful. Because Williams contributed to the delay by lying about his name and avoiding Darlington's questions about weapons, and because the entire stop lasted just over ten minutes, the length of the detention was not unreasonable. *Id.* at 688, 105 S.Ct. 1568. And since the interaction between Williams and Darlington occurred before Darlington completed the purpose of the traffic stop–which would have occurred when Darlington gave the driver back his license and insurance card and decided whether or not to issue a ticket–the pat-down was justified as long as the interaction between the officers and Williams constituted reasonable suspicion. The district court concluded that it did, and after reviewing the issue of reasonable suspicion *de novo,* we agree. *United States v. Lenoir,* 318 F.3d 725, 728 (7th Cir.2003).

We have held previously that a defendant's "furtive" movements during a traffic stop can justify reasonable suspicion. In *United States v. Evans,* 994 F.2d 317 (7th Cir.1993), for example, we held that officers had reasonable suspicion to justify searching the passenger compartment of a car because, after the officers had activated their lights and sirens to pull the car

over, the car's occupants were observed "lean[ing] forward at a forty-five degree angle for several seconds, as to place or retrieve something under the seat." *Id.* at 321. Similarly, we have concluded that a defendant who "appeared to raise himself up from the car seat and [begin] reaching towards the floor" after seeing a police car behind him had made a "furtive gesture" justifying a search of his car. *United States v. Nash,* 876 F.2d 1359, 1361 (7th Cir.1989). Finally, we have noted that a defendant's "furtive gestures" in "moving or leaning toward the right side of the truck" were consistent with the movements of someone reaching for a weapon. *United States v. Denney,* 771 F.2d 318, 322 (7th Cir.1985).

Williams does not argue that he did not make *any* movements in the back seat and disputes only the district court's conclusion that such movements could constitute reasonable suspicion to justify the pat-down. Our case law is clear, however, that such furtive movements are sufficient. Thus when Darlington observed Williams making movements that suggested–given the totality of the circumstances–that Williams was concealing something, Darlington had reasonable suspicion to conduct the pat-down. The fact that once Williams got out of the car he gave Darlington a false name is, as the district court noted, further support for Darlington's decision to conduct the pat-down, but reasonable suspicion existed even before that point. *See United States v. Tipton,* 3 F.3d 1119, 1123 (7th Cir.1993) (finding probable cause to arrest defendant in part because he provided a false name to investigating officers).

AFFIRMED.