108 F.3d 1380
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Emetric CARPENTER, Defendant-Appellant.
 No. 96-2416.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 5, 1997.*
Decided March 7, 1997.
 
 Before BAUER, COFFEY and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Emetric Carpenter appeals from his conviction for possession of a firearm by a convicted felon, 18 U.S.C. § 922(g), on two grounds: that the trial court should have suppressed certain evidence because police pursued and detained him in violation of the Fourth Amendment; and that he was denied a fair trial by testimony suggesting that he was a gang member. We affirm.
 
 
 2
 On December 29, 1994, two police officers on patrol in a marked squad car spotted Carpenter walking away from the Warner Homes, a public housing project in Peoria, Illinois. The housing project had been associated with a great deal of violence and gang activity. The officers stated at the suppression hearing[1] that they believed that Carpenter did not live there, that he was a convicted felon (for shooting someone near the Warner Homes), and that he was a member of the Black Peastones, a street gang that dominated the Warner Homes and was at "war" with a rival gang called the Black Disciples. The officers stated that they had no immediate reason to detain Carpenter, but that they drove up to him to ask why he was there and whether he knew anything about the rumored gang war. Carpenter ignored their inquiries, then ran as one of the officers began to get out of the car; the officers pursued; and after a circuitous chase, Carpenter was apprehended at gunpoint. One officer patted down and handcuffed him while the second retraced his path of flight, soon locating a handgun on the ground adjacent to a nearby building.
 
 
 3
 Carpenter was placed under arrest. The officers stated that he waived his Miranda rights and told them that he had possessed the weapon and had thrown it away during the chase. They also said that Carpenter admitted being a Black Peastone and that he needed the weapon to protect himself in the gang war. When Carpenter testified at trial, he denied making these statements, and denied that he had either possessed the gun or been a gang member.
 
 
 4
 Carpenter moved to suppress the evidence resulting from his encounter with the police, arguing that the stop violated the Fourth Amendment's prohibition of unreasonable searches and seizures. Noting that it was a close question, the district court agreed with the government's position that the initial encounter was consensual, that Carpenter was not detained until he was handcuffed, and that the discovery of the gun established probable cause to arrest him.
 
 
 5
 Carpenter's specific objection to the district court's holding is not entirely clear, but he appears to take issue with the point at which the officers detained him, arguing that their knowledge of him and the circumstances did not add up to the reasonable suspicion of criminal activity required to justify a Terry investigative stop, see Terry v. Ohio, 392 U.S. 1, 21 (1968). Carpenter also believes that the stop was "pretextual," in the sense that the officers, by inducing Carpenter to run away, manipulated the situation to make it appear they had reasonable suspicion.[2] He does not, however, challenge the characterization of his brief detention in handcuffs as a stop, as opposed to a full arrest that would require probable cause. See United States v. Tilmon, 19 F.3d 1221, 1226-27 (7th Cir.1994) (application of reasonable force, including handcuffs and brandished guns, does not automatically transform stop into arrest).
 
 
 6
 We generally review the district court's determinations of reasonable suspicion and probable cause de novo, but examine findings of historical fact only for clear error. Ornelas v. United States, 116 S.Ct. 1657, 1663 (1996). An investigatory stop of a given level of intrusiveness is permitted if the officer making the stop is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21; United States v. Adebayo, 985 F.2d 1333, 1339 (7th Cir.1993). Here, the facts specifically articulated were that the officers recognized Carpenter as a gang member whose gang was reportedly at war with a rival and who had previously been convicted of one of many violent crimes committed near the Warner Homes. They also believed that Carpenter's gang was active in the Warner Homes but that he did not live there. These were the reasons underlying their desire to initiate a consensual encounter with Carpenter; when he abruptly fled, it added one final element to their cumulative suspicions.
 
 
 7
 We have recognized that flight from a police officer, while not necessarily enough standing alone, is a relevant and probative factor in establishing reasonable suspicion. United States v. Quinn, 83 F.3d 917, 921-22 (7th Cir.1996); Tom v. Voida, 963 F.2d 952, 958 (7th Cir.1992). Moreover, "[k]nowledge of gang association and recent relevant criminal conduct ... is a permissible component of the articulable suspicion required for a Terry stop." United States v. Feliciano, 45 F.3d 1070, 1074 (7th Cir.), cert. denied, 116 S.Ct. 153 (1995). No two Fourth Amendment cases are exactly alike, but having compared these facts to the facts found in Quinn, Tom, and Feliciano, it is not a difficult conclusion here that the cumulative effect of all the factors articulated by the officers, particularly Carpenter's abrupt decision to flee, amounted to reasonable suspicion and justified stopping Carpenter for further investigation.
 
 
 8
 Carpenter's pretext argument was not presented to the district court, and thus we may briefly note that it has been forfeited. Parenthetically, even accepting arguendo the legal basis of his claim, we find nothing in the suppression hearing or the trial itself that suggests that the officers goaded Carpenter into flight. On appeal Carpenter insinuates that he and one of the officers had had some unfriendly encounters in the past, but Carpenter's actual testimony provided no reason for his decision to flee other than the fact that he recognized one officer as "Pac-Man," whatever that nickname was meant to suggest.[3] There is no evidence that the police manipulated the situation to concoct reasonable suspicion.
 
 
 9
 Carpenter's final argument is that he was unfairly prejudiced by introduction of his admission to the officers that he was a gang member at war with another gang. The district court denied his motion in limine to exclude that aspect of the statement. To prevail, Carpenter must show that this was an abuse of discretion. United States v. Rodriguez, 925 F.2d 1049, 1053 (7th Cir.1991). Evidence of gang membership may at times have significant probative value, but, as the district court recognized, it should be excluded under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by the danger of unfair prejudice." Id.
 
 
 10
 In opposition to Carpenter's motion, the government argued that Carpenter's statements were probative because the defense theory was that he had neither possessed the gun nor made the incriminating statement. His statement of membership and the reference to the gang war tended to establish his motive for carrying the weapon. If it had been stripped of context, his alleged admission that he had possessed the gun would have been far less believable. As the government points out, there was a strong link of relevance between the evidence of gang activity and the possession of a firearm. Acknowledging the risk of unfair prejudice, the district court elected to admit the evidence, but took the precautions of permitting inquiries at voir dire into the prospective jurors' attitudes about gang membership and of giving the jury a precautionary instruction when the evidence was admitted that it was only to be used for the limited purpose of establishing Carpenter's motive. These facts are strikingly similar to those in United States v. Butler, 71 F.3d 243, 250-52 (7th Cir.1995), where we approved of the admission of such evidence with appropriate precautions. In Carpenter's case, it is clear that the district court did not abuse its discretion.
 
 
 11
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary; accordingly, the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 In his brief, Carpenter has failed to cite to or append the relevant portions of the suppression hearing transcript; it appears he may have even failed to have a transcript made. He also did not include the district court's oral ruling denying his motion in limine to exclude evidence of gang membership. These serious lapses complicate our review of the district court's ruling and violate Federal Rules of Appellate Procedure 28(a)(4), 30(a)(3), as well as Circuit Rules 28(d)(2), 30(a)
 
 
 [2]
 This is not "pretext" in the same sense as was used in the recent Supreme Court decision in Whren v. United States, 116 S.Ct. 1769 (1996), where a pretextual search or seizure was described as action taken with probable cause but for ulterior motives. See United States v. Williams, No. 96-2407, 1997 WL 60806, at * 2 (7th Cir. Feb. 13, 1997) (discussing Whren )
 
 
 [3]
 From the cross-examination of Carpenter at trial:
 [Prosecutor]: Is there any particular reason that you call him Pac-Man?
 [Carpenter]: No, he's just Pac-Man.
 (Trial Tr. at 171.)